802 F.2d 296
 Debbie WILLIAMS and Linda Stanley,
Plaintiffs/Appellees/Cross-Appellants,
v.
William R. BUTLER, Defendant,
v.
The CITY OF LITTLE ROCK, ARKANSAS, Third-Party
Defendant/Appellant/Cross- Appellee.
 Nos. 83-2534, 83-2641.
 United States Court of Appeals,
Eighth Circuit.
 Submitted May 15, 1986.
Decided Sept. 26, 1986.
 
 Thomas M. Carpenter, Little Rock, Ark., for third-party defendant/appellant/cross-appellee.
 JoAnn Maxey, Little Rock, Ark., for plaintiffs/appellees/cross-appellants.
 Before LAY, Chief Judge, FLOYD R. GIBSON, Senior Circuit Judge, HEANEY, Circuit Judge, BRIGHT, Senior Circuit Judge, ROSS, McMILLIAN, ARNOLD, JOHN R. GIBSON, FAGG, BOWMAN, WOLLMAN, and MAGILL, Circuit Judges, En Banc.
 FLOYD R. GIBSON, Senior Circuit Judge.
 
 
 1
 This case is before the court on remand from the United States Supreme Court for further consideration in light of Pembaur v. City of Cincinnati, --- U.S. ----, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). The issue we must decide is whether, in light of Pembaur, municipal liability may be imposed upon the City of Little Rock under 42 U.S.C. Sec. 1983 for the single unconstitutional discharge of a municipal court clerk by the municipal judge to whom the city had delegated final authority concerning employment matters involving municipal court personnel. We hold that municipal liability may be imposed upon the city in these circumstances.
 
 I.
 
 2
 William R. Butler was an elected municipal judge for the traffic court of the City of Little Rock, Arkansas. The municipal traffic court was under investigation by a grand jury for possible corruption. Both Debbie Williams and Linda Stanley, municipal court clerks, had witnessed Butler deliberately destroy traffic tickets. After Butler learned that Williams told the police what she had witnessed, he fired her. After testifying before the grand jury as to what she had witnessed, Stanley allegedly was harassed until she resigned. Williams and Stanley filed suit in federal district court against Butler seeking damages and equitable relief pursuant to 42 U.S.C. Sec. 1983 for violations of their first amendment rights. Although the plaintiffs named Butler as defendant in his official capacity, which in essence was a suit against the city, Butler filed a third-party complaint against the city alleging that it was responsible for any judgment against him. At the close of the evidence and in response to motions by the city, the district court found as a matter of law that Butler acted in his official capacity and within the authority delegated to him by the city if he, in fact, had discharged Williams or Stanley. The court specifically found that the undisputed evidence demonstrated that Butler had been delegated policy-making authority by the city and that he was acting pursuant to that authority. The jury returned a verdict in favor of Williams on her claim against Butler, awarding her damages. The jury returned a verdict in favor of Butler, however, on Stanley's claim. Consistent with its ruling at the close of the evidence, the court entered judgment in favor of Butler on his third-party complaint against the city, and the city appealed.
 
 
 3
 On appeal, a panel of this court affirmed the district court's judgment that the city was liable for Butler's unconstitutional discharge of Williams. Williams v. Butler, 746 F.2d 431 (8th Cir.1984) (Judge McMillian dissenting). The panel held that:
 
 
 4
 (1) if, according to a policy or custom established by a governing body, an official is delegated the authority, either directly or indirectly, to act on behalf of a governing body; and (2) if a decision made within the scope of the official's authority ends the matter, then the acts of the official may fairly be said to be those of the local governing body.
 
 
 5
 Id. at 438. The panel decision was vacated, however, when a rehearing en banc was granted. On rehearing, the district court's decision was affirmed by an equally divided court. Williams v. Butler, 762 F.2d 73 (8th Cir.1985). The Supreme Court granted the city's petition for a writ of certiorari and vacated the judgment of the en banc court, remanding the case to us for further consideration in light of Pembaur v. City of Cincinnati, supra. City of Little Rock v. Williams, --- U.S. ----, 106 S.Ct. 1508, 89 L.Ed.2d 909 (1986).
 
 II.
 
 6
 In Pembaur the plaintiff, an Ohio physician and proprietor of a medical clinic located in Cincinnati, Ohio, filed suit in federal district court against, among others, the City of Cincinnati and Hamilton County, seeking damages pursuant to 42 U.S.C. Sec. 1983 for violations of his Fourth and Fourteenth Amendment rights. Doctor Pembaur alleged that his rights were violated when police forcibly entered his clinic to serve capiases on two of his employees. After meeting with resistance from Doctor Pembaur, the Deputy Sheriffs called the County Sheriff's office and were directed to call the County Prosecutor's office for instructions. Upon the prosecutor's instructions to "go in and get" the employees, the Deputy Sheriffs and city police obtained an axe and chopped down the door of the clinic. The Deputy Sheriffs searched unsuccessfully for the employees. Doctor Pembaur alleged that absent exigent circumstances the Fourth Amendment prohibited the officials from searching his place of business without a search warrant in an attempt to execute a capias on a third person.[1] The district court dismissed the complaint against both the county and the city, ruling that the county and city were not liable because the individual officers were not acting pursuant to "official policy" necessary to impose municipal liability. On appeal, the Sixth Circuit reversed the district court's decision with respect to city policy,[2] and affirmed the court's decision concerning county policy, but for different reasons. The court of appeals held that, although pursuant to Ohio law the Hamilton County Sheriff and Prosecutor were authorized to establish official county policy, Pembaur had failed to prove the existence of county policy in this case. Pembaur failed to show "anything more than that, on this one occasion, the Prosecutor and the Sheriff decided to force entry into his office. That single, discrete decision is insufficient, by itself, to establish that the Prosecutor, the Sheriff, or both were implementing a governmental policy." Pembaur v. City of Cincinnati, 746 F.2d 337, 341 (6th Cir.1984) (citation and footnote omitted) (emphasis in original).
 
 
 7
 The Supreme Court granted Pembaur's petition for writ of certiorari and reversed the Sixth Circuit's decision. The majority concluded that in the appropriate circumstances municipal liability may be imposed for a single decision made by municipal policymakers. The majority described four of those circumstances as follows: (1) when the single decision is made by the properly constituted legislative body--"because even a single decision by such a body unquestionably constitutes an act of official government policy." (citing Owen v. City of Independence, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980); Newport v. Fact Concerts, Inc., 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981) ); (2) when the single decision is made pursuant to formal rules or understandings (citing the written rule in Monell v. Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) ); (3) when the single decision adopts a particular course of action tailored to a specific situation and is properly made by the government's authorized decisionmakers (citing Owen and Newport, supra ); and (4) when the single decision is directed by those who establish governmental policy. Pembaur, 106 S.Ct. at 1298-99.
 
 
 8
 Under Ohio law, the County Sheriff and Prosecutor could establish county policy. The Deputy Sheriffs were following standard procedure when they sought instructions from the County Sheriff and Prosecutor. The Court ruled that "[i]n ordering the Deputy Sheriffs to enter [Pembaur's] clinic the County Prosecutor was acting as the final decisionmaker for the county, and the county may therefore be held liable under Sec. 1983." Id. at 1301.
 
 
 9
 The Supreme Court recognized that the authority to make municipal policy often is spread among various officers and official bodies. The Court emphasized, however, that not every decision by municipal officers subjects the municipality to Sec. 1983 liability. "Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." Id. at 1299 (plurality opinion) (footnote omitted). Justice Brennan, in his plurality opinion, phrased the Court's holding as follows: "We hold that municipal liability under Sec. 1983 attaches where--and only where--a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." Id. at 1300 (citing City of Oklahoma City v. Tuttle, 471 U.S. 808, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791 (1985) ).
 
 
 10
 In concurring opinions, Justices White and O'Connor focused on the policy of forcible entry of third-party property to effect an arrest warrant and reasoned that the decision to use force by the sheriff and prosecutor, authorized policymakers in this case, "sufficiently manifested county policy to warrant reversal of the judgment below." 106 S.Ct. at 1301 and 1304. In his concurring opinion, Justice Stevens focused on the fact that the unconstitutional acts were committed by municipal agents in the course of their employment. Id. at 1303.
 
 
 11
 Justice Powell was joined by Chief Justice Burger and Justice Rehnquist in dissent. Justice Powell took the position that no prior county policy existed and the offhand telephone response from a busy prosecutor amounted to a mere ad hoc decision, which cannot create a policy. Id. at 1309.
 
 III.
 
 12
 In light of the Supreme Court's decision in Pembaur, we hold that Sec. 1983 municipal liability may be imposed upon the City of Little Rock in this case. The record before us indicates that Butler was delegated final policy-making authority concerning employment matters in the municipal court, and that he acted pursuant to that authority when he chose to discharge Williams for exercising her first amendment rights. At the conclusion of the evidence the district court found that the undisputed evidence demonstrated that Butler was the policymaker with respect to employment matters in Little Rock Municipal Court. The district court specifically found that the city delegated to Butler, as judge and chief administrative officer of the municipal court, the final authority for administering personnel decisions in the municipal court. Butler "had the sole and exclusive control of the hiring, termination, discipline, [and] discharge of his employees." Transcript at 493-94. In response to the city's question whether Butler set policy, the district court stated: "I'm finding that they completely turned it over to him, and he operated it exclusively. Yes." The court added, "I think he not only set the policy, he did it all. I don't know how I could go into it other than just reaching that conclusion. The fact and the legal conclusion is that he did it all." Transcript at 494-95. The district court also found that Butler was acting in his official capacity if he in fact terminated the plaintiffs. The court therefore concluded that the city would be liable for Butler's conduct if the jury found that Butler violated the plaintiff's constitutional rights.[3]
 
 
 13
 The record amply supports the district court's finding that Butler possessed policy-making authority and was acting pursuant to that authority when he, as the jury found, discharged Williams. Therefore, we conclude that the district court's finding is not clearly erroneous. Butler admitted in his response to requests for admissions that his personnel served at his "sole pleasure" because of the city's policy of delegating to him the final authority in employment matters. He also admitted that he did not consult the personnel office or the City Board of Directors when he discharged Williams or any other clerks. Record at 164, 165.[4] Butler testified that after he was elected in 1969, he went to the personnel director, Coy Adams, to inquire about assembling a staff. Butler stated that Adams told him that "it had always been traditional that the City of Little Rock left it up to the judges of the courts." Transcript at 430. The personnel office was involved only to the extent that Butler would send his newly hired personnel to the office "to let an application be filed, and * * * to sign up for insurance." Transcript at 431. Butler had followed this procedure since he took office in 1969. Williams and a witness for Williams testified that they had been fired by Butler. The city introduced no evidence to the contrary. Indeed, it was the city's position at trial that Butler possessed the sole and exclusive authority and ultimate responsibility concerning employment matters in the municipal court. The city's sole responsibility, it argued, was paying the salaries. In its counterclaim, the city stated, "The City of Little Rock has always agreed with the plaintiffs' contention that defendant Butler is responsible for hiring and terminating his chief clerk and deputy clerks." Record at 124 (paragraph 7). In its brief in support of a motion to dismiss, the city argued that it was not empowered to hire or fire municipal court personnel. It was "defendant Butler only" who possessed such power. Record at 71-72 (emphasis in original). See Record at 252 (the city's post-trial brief); Record at 130 (paragraphs 8 and 9 of the city's answer in which the city denies that it had the power to reinstate the plaintiffs, and denies that Butler did not possess such power). We conclude, therefore, that the district court did not err in finding as a matter of law that Butler was the policymaker with respect to employment matters in the municipal court.
 
 
 14
 The city now argues that Butler was given only the discretion to hire and fire employees, and his decision to fire Williams was simply an unconstitutional exercise of that discretion, which cannot be attributed to the city. In support of its argument, the city calls our attention to footnote twelve of the Pembaur opinion. In footnote twelve, the plurality drew a distinction between an official who possessed mere discretion and one who possessed final policy-making authority, stating that only the acts of the policymaker will represent municipal policy and could give rise to municipal liability. The city's characterization of Butler's authority as merely discretionary is without merit. This characterization is contrary to the city's position at trial and also contrary to the evidence, as we have discussed in the preceding paragraphs. The record indicates that Butler possessed more than discretionary power; as the district court found, Butler "not only set the policy, he did it all."
 
 
 15
 Contrary to its position at trial and contrary to the evidence in the record, the city now argues that it never delegated the authority in question to Butler. The city's argument, even if true, does not help its position. Even if the city did not actually delegate the authority, the record amply demonstrates that the city acquiesced to it. For at least fifteen years, and probably longer, Butler possessed and exercised carte blanche authority with respect to employment matters in municipal court.
 
 
 16
 By statute, municipal court judges are authorized to employ necessary court personnel. Ark.Stat.Ann. Sec. 22-713 (Supp.1985). The salary range for court personnel is set by statute, which also authorizes the city's governing body to set specific salaries within that range. Ark.Stat.Ann. Sec. 22-704.1(45) (Supp.1985). During oral argument, counsel for the city relied on the Arkansas Statutes and Exhibit 5 in support of the city's argument that the city possesses final authority concerning employment matters in municipal court. Exhibit 5 is a Status Change report, authorizing a change in plaintiff Williams' salary while she was employed as a clerk. Such reports usually contain three authorizing signatures: Butler's (in this instance apparently signed by the police department's business manager), the personnel director's, and the city manager's (in this instance signed by his secretary). The city argues that this document and the statute demonstrate that all employment decisions must be approved by the city, thereby making it the final authority with respect to employment matters. We disagree. At most the document demonstrates that the city, consistent with the statute, approves salary changes that are within the statutory range. Moreover, the city's argument here contradicts the position it took in its post-trial brief that it had no control whatsoever over the municipal court concerning employment matters:
 
 
 17
 The Arkansas General Assembly * * * has authorized Judge Butler to employ persons to fill [the] staff positions. Inherent in the power to hire is the power to discharge or terminate. The Arkansas Constitution, Art. 7, Sec. 2, makes it very clear the legislative and executive branches of the City are not to interfer[e] with those powers in the municipal court. The City submits that the Court should find plaintiffs to be employees of the Court, and not employees of the City.
 
 Record at 252.[5]
 
 18
 In this case, the unconstitutional act is that of the municipality, not merely that of one of its employees. Consequently, imposing municipal liability on the City of Little Rock is the result of a fault-based determination, rather than the application of respondeat superior principles. See Pembaur, 106 S.Ct. at 1298; City of Oklahoma City v. Tuttle, 105 S.Ct. at 2433-34 (plurality) (the purpose of Monell's policy or custom requirement is to require a determination of fault on the part of the municipality, not merely one of its employees). Butler's acts, pursuant to an unwritten policy, became the city's acts. The City of Little Rock certainly would have been liable if the city's governing body had made the decision to discharge Williams. See Owen and Newport, supra. In other words, if Butler had not possessed the final authority in this matter, if Williams had followed the grievance procedures available to employees outside the municipal court, and if the city's properly constituted governing body had upheld the discharge, then clearly the city would have been liable for the governing body's action. We see no constitutional difference between imposing Sec. 1983 liability on the city in those circumstances and imposing liability on the city where, as here, it has delegated that final authority to discharge employees to a policy-making official such as Butler.[6] Consequently, we hold that where, pursuant to municipal policy or custom, an official is delegated final policy-making authority, and acts unconstitutionally pursuant to that authority, the official's conduct may fairly be said to be that of the city, and the city may be held liable under Sec. 1983.
 
 IV.
 
 19
 In conclusion, the record amply supports the district court's finding that Butler possessed final policy-making authority with respect to employment matters in the municipal court, and that he exercised that authority when he discharged Williams. Consequently, in light of Pembaur v. City of Cincinnati, Sec. 1983 liability may be imposed upon the City of Little Rock. Therefore, we affirm the judgment of the district court.
 
 
 20
 In the original appeal, issues were raised concerning punitive damages, attorney fees, remarks made during closing argument, and the admission into evidence of recorded conversations. These issues were not resubmitted to this court on remand from the Supreme Court, nor were they briefed, submitted and argued in this en banc hearing. We therefore consider them waived, or if not waived, we decide all but the attorney fees issue in accordance with the reasoning set forth in the original panel opinion. See 746 F.2d at 440-44. The attorney fees issue was decided by the court on the first rehearing en banc, and we decide that issue according to our reasoning in that opinion. See 762 F.2d at 73.
 
 
 21
 Costs assessed against the City of Little Rock.
 
 
 22
 ROSS, Circuit Judge, with whom JOHN R. GIBSON, BOWMAN, WOLLMAN, and MAGILL, Circuit Judges, join, dissenting.
 
 
 23
 For the third time,[1] this court holds the City of Little Rock liable for Judge Butler's unlawful decision to fire a court employee who helped expose Butler's corruption. In doing so, this court essentially holds that the City has a policy of firing employees who attempt to help the City uncover corruption. This decision was wrong the first two times. After the decision was vacated by the Supreme Court with instructions to read and apply Pembaur v. City of Cincinnati, --- U.S. ----, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986), the decision is entirely unsupported. Based on Pembaur, this court should reverse the district court's finding in favor of Butler on his third party complaint against the City. Butler alone was responsible for his firing decision and Butler alone should be held accountable.
 
 
 24
 In Pembaur, the Court held that "municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." Id. 106 S.Ct. at 1298. The Court then added:
 
 
 25
 Having said this much, we hasten to emphasize that not every decision by municipal officers automatically subjects the municipality to Sec. 1983 liability. Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered. The fact that a particular official--even a policymaking official--has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion. * * * The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable.
 
 
 26
 Id. at 1299-1300 (footnotes omitted, emphasis supplied). This policymaking requirement was illustrated in footnote 12 with an employment example directly applicable to this case:
 
 
 27
 Thus, for example, the County Sheriff may have discretion to hire and fire employees without also being the county official responsible for establishing county employment policy. If this were the case, the Sheriff's decisions respecting employment would not give rise to municipal liability, although similar decisions with respect to law enforcement practices, over which the Sheriff is the official policymaker, would give rise to municipal liability. Instead, if county employment policy was set by the Board of County Commissioners, only that body's decisions would provide a basis for county liability. This would be true even if the Board left the Sheriff discretion to hire and fire employees and the Sheriff exercised that discretion in an unconstitutional manner; the decision to act unlawfully would not be a decision of the Board. However, if the Board delegated its power to establish final employment policy to the Sheriff, the Sheriff's decisions would represent county policy and could give rise to municipal liability.
 
 
 28
 Id. at 1300, n. 12 (emphasis deleted).
 
 
 29
 In the case before us, Judge McMillian's dissent to the panel opinion stated that "there was no evidence that Butler was delegated authority to set city personnel policy." Williams v. Butler, 746 F.2d 431, 444 (8th Cir.1984) (McMillian, J., dissenting). We now know that a municipality cannot be held liable for an employee's decisions absent such evidence. Because there is insufficient evidence to support a finding that Butler had the authority to make final employment policy for the City, as opposed to mere final employment decisions for the City, the City cannot be held liable for Butler's decision to fire Williams.
 
 
 30
 Even if Butler had somehow been given authority to make employment policy for the City, the facts in this case do not support a conclusion that Butler's vengeful and self-motivated decision to fire Williams actually created employment policy for the City. In my view, a policy decision is distinguishable from other types of decisions in that it results in "a general position that would govern future cases." Pembaur v. City of Cincinnati, supra, 106 S.Ct. at 1309 n. 7 (Powell, J., dissenting). The City of Little Rock never adopted a policy of firing employees who attempt to help the city uncover corruption, and it certainly cannot be said to have adopted such a policy for general application in future cases.
 
 
 31
 A plurality of the Court in Pembaur adopted a different definition of the term "policy". According to the plurality, a policy decision simply involves "a deliberate choice to follow a course of action * * * made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." Id. at 1300. This standard was contained in Part II-B of the opinion. It received the approval of only four justices.[2] Moreover, one of the four, Justice White, interpreted the standard quite narrowly. In deciding to cast his vote with the majority, Justice White relied heavily upon the fact that the unlawful act committed in Pembaur (a forcible entry without a search warrant) was not unlawful at the time committed. Based on this fact, he found it reasonable to infer that the municipal officials' decision to commit the unlawful act was consistent with municipal policy. But this inference would not have been proper, Justice White continued, if the unlawful act had been illegal under federal, state, or local law at the time the act was committed. His point was demonstrated with the following statements:
 
 
 32
 Local law enforcement officers are expected to obey the law and ordinarily swear to do so when they take office. Where the controlling law places limits on their authority, they cannot be said to have the authority to make contrary policy. Had the sheriff or prosecutor in this case failed to follow an existing warrant requirement, it would be absurd to say that he was nevertheless executing county policy in authorizing the forceful entry in this case and even stranger to say that the county would be liable if the sheriff had secured a warrant and it turned out that he and the magistrate had mistakenly thought there was probable cause for the warrant. If deliberate or mistaken acts like this, admittedly contrary to local law, expose the county to liability, it must be on the basis of respondeat superior and not because the officers' acts represents local policy.
 
 
 33
 Id. at 1301-02 (White, J., concurring). Justice O'Connor expressed her agreement with Justice White's approach in a separate concurrence.
 
 
 34
 In the case before us, the unlawful act (retaliatory firing) was clearly unlawful at the time it was committed, and the municipal official who committed the act (a municipal traffic judge) was expected to obey the law and presumably swore to do so when he took office. As such, the judge "cannot be said to have [had] the authority to make * * * [employment] policy" which was inconsistent with the law. Id. at 1301. In other words, Butler's decision to fire Williams was "forbidden by * * * [the] law * * * [and was a decision] that [he] then had * * * [no] authority to make." Id. at 1302. As such, the City cannot be held responsible for Butler's aberrant act.
 
 
 
 [1]
 In Steagald v. United States, 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981), decided the day after Doctor Pembaur filed his lawsuit, the Supreme Court held that absent exigent circumstances or consent an officer may not make a warrantless search for the subject of an arrest warrant in a third party's home. Defendant County of Hamilton did not challenge the retroactive application of Steagald. In fact, the county conceded that Steagald applied retroactively, and the Supreme Court decided the case in light of the county's concession. Pembaur, 106 S.Ct. at 1297 n. 5
 
 
 [2]
 The Sixth Circuit held that the district court's finding that no city policy existed was clearly erroneous in light of the city police chief's testimony that the city police took whatever steps were necessary, including forcible entry, to serve warrants. 746 F.2d at 341
 
 
 [3]
 The district court prepared a post-trial memorandum and order in which it clarified the findings it made at the conclusion of the evidence. The court listed the factual basis for its findings. The court stated that although Butler's staff was processed through the city personnel office, paid by the city, assigned city parking places, and worked in city buildings, Butler hired, controlled, and supervised his staff. No evidence was introduced to the contrary. Record at 271
 
 
 [4]
 These were not self-serving admissions at the time Butler responded to the city's request. The city's position throughout the trial was that Butler, not the city, had exclusive control and ultimate responsibility with respect to employment matters in the municipal court
 
 
 [5]
 Attached to Exhibit 5 is another Status Change report filed when Williams was hired. Counsel for the city also relied on this report in support of the argument that the city possesses the final authority concerning employment matters. In addition to the reasons we discussed above concerning Exhibit 5, we note that the signatures by the officials' assistants indicate that the authorization was pro forma and as a practical matter Butler possessed the final authority here
 
 
 [6]
 The constitutional violation in this case is not the result of a mere aberrant act by a person in a policy-making position. See Pembaur, 106 S.Ct. at 1302 (White, J., concurring) (municipal liability would not have attached had there been a statute or ordinance that provided the proper constitutional protection). To characterize Williams' discharge in this case as merely the result of an aberrant act ignores the finality of Butler's decisions with respect to employment matters. The record does not indicate that grievance procedures existed whereby municipal court personnel could appeal adverse employment decisions. Rather, the record indicates that as a result of an unwritten policy or custom, giving municipal judges final authority concerning municipal court employment matters, court personnel were subject to Butler's final decisions
 
 
 [1]
 Once by the panel, once by this court en banc by virtue of a tie vote, and now by a majority vote
 
 
 [2]
 The four concurring justices were Brennan, White, Marshall, and Blackmun. Justice O'Connor joined in the judgment but refused her approval of Part II-B because of a "fear that the standard the majority articulates may be misread to expose municipalities to liability beyond that envisioned by the Court in Monell." Id. at 1305 (O'Connor, J., concurring). Likewise, Justice Stevens joined in the judgment but not Part II-B of the opinion. His refusal to join Part II-B was founded on his view that municipalities can be liable under a respondeat superior theory