863 F.2d 1398
 57 USLW 2378
 Debbie WILLIAMS and Linda Stanley,
Plaintiffs/Appellees/Cross-Appellants,
v.
William R. BUTLER, Defendant,
v.
The CITY OF LITTLE ROCK, ARKANSAS, Third-Party
Defendant/Appellant/Cross- Appellee.
 Nos. 83-2534, 83-2641.
 United States Court of Appeals,
Eighth Circuit.
 Submitted July 12, 1988.
Decided Dec. 21, 1988.
 
 Thomas M. Carpenter, Little Rock, Ark., for third-party defendant/appellant/cross-appellee.
 Philip E. Kaplan, Little Rock, Ark., for plaintiffs/appellees/cross-appellants.
 Before LAY, Chief Judge, FLOYD R. GIBSON, Senior Circuit Judge, HEANEY, McMILLIAN, ARNOLD, JOHN R. GIBSON, FAGG, BOWMAN, WOLLMAN, MAGILL, and BEAM, Circuit Judges, En Banc.
 FLOYD R. GIBSON, Senior Circuit Judge.
 
 
 1
 The sole issue on remand is whether the City of Little Rock, Arkansas may be held liable for the unconstitutional discharge of a municipal court clerk by a municipal judge in 1981. Twice now our decision holding the City of Little Rock liable by a divided court has been vacated and remanded by the United States Supreme Court. In 1986 the Court remanded for further consideration in light of Pembaur v. City of Cincinnati, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). Our decision on remand was then vacated for reconsideration in light of City of St. Louis v. Praprotnik, --- U.S. ----, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988). Because we believe that Praprotnik supports municipal liability in the instant case, we affirm the order of the district court holding the City of Little Rock liable.
 
 I. BACKGROUND
 
 2
 Defendant, William R. Butler, was an elected municipal judge for the City of Little Rock traffic court. Plaintiffs, Debbie Williams and Linda Stanley, were hired by Butler as clerks for his court. On several different occasions Williams and Stanley saw Butler deliberately destroy traffic tickets. When Butler learned that Williams had notified the police, he fired her. Stanley was subpoenaed before a grand jury which was investigating possible corruption in the municipal traffic court. After testifying about Butler, she allegedly was harassed until she resigned.
 
 
 3
 Williams and Stanley filed this 42 U.S.C. Sec. 1983 lawsuit against Butler in his official capacity alleging that their First Amendment rights had been violated. Although Butler was named in his official capacity,[1] he filed a third-party complaint against the City contending that it was liable for any damages assessed against him. A jury trial resulted in a defense verdict on Stanley's claim and an award of $40,000 compensatory damages on Williams's claim. The district court found in favor of Butler on his third-party complaint against the City.
 
 
 4
 The district court found that the City had delegated to Butler the authority to make City policy as to employment matters in his court. The undisputed evidence showed that at the time of his election in 1969 Butler was given carte blanche authority to hire and fire his employees. In his response to requests for admissions, Butler admitted that his personnel served at his "sole pleasure." He further admitted that he did not consult the City personnel office before firing Williams.
 
 
 5
 Butler testified at trial that after his election in 1969 he was told by the City personnel director that "it had always been traditional that the City of Little Rock left [assembling a court staff] up to the judges of the courts." The personnel office's involvement was minimal; it handled the paperwork--insurance, etc.--of new court employees.
 
 
 6
 At the conclusion of the evidence regarding the City's liability the district court stated:I conclude from the evidence in the case that the City of Little Rock established Judge Butler as the chief administrative officer of Little Rock Municipal Court Division; two, that he had sole exclusive control of the hiring, termination, discipline, [and] discharge of his employees * * * * I think the City turned over to him, gave him the authority and responsibility administering personnel decisions in the Little Rock Municipal Court * * * * I think he not only set policy, he did it all.
 
 
 7
 The district court also prepared a post-trial memorandum in which it stated:
 
 
 8
 In this case, the undisputed facts are that plaintiffs were hired by Judge Butler, an official of the City; he controlled and supervised their work * * * * The authority to make employment decisions was given to Butler by the city personnel officer when Butler took office a number of years ago.
 
 
 9
 On appeal a panel of this court, in a two to one decision, affirmed the district court's judgment that the City was liable for Butler's unconstitutional discharge of Williams. Williams v. Butler, 746 F.2d 431 (8th Cir.1984). That decision was vacated, however, when rehearing en banc was granted. On rehearing the judgment of the district court was affirmed by an equally divided court. Williams v. Butler, 762 F.2d 73 (8th Cir.1985). The United States Supreme Court then granted the City's petition for a writ of certiorari and vacated the judgment of the en banc court, remanding the case for reconsideration in light of Pembaur.
 
 
 10
 On remand the court en banc once again affirmed the judgment of the district court. Williams v. Butler, 802 F.2d 296 (8th Cir.1986) (7-5 decision). The majority noted that "Butler was delegated final policymaking authority concerning employment matters in the municipal court, and that he acted pursuant to that authority when he chose to discharge Williams for exercising her first amendment rights." Id. at 299-300. The majority held that Butler possessed final policymaking authority rather than merely the discretion to hire and fire employees. Id. at 301. Once again the Supreme Court granted the City's petition for a writ of certiorari and vacated our decision with directions to reconsider in light of Praprotnik. --- U.S. ----, 108 S.Ct. 1102, 99 L.Ed.2d 264.
 
 II. DISCUSSION
 
 11
 It is now axiomatic that although municipalities are not wholly immune from suit under 42 U.S.C. Sec. 1983, they may not be held liable on the theory of respondeat superior. In Monell v. Department of Soc. Servs., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court reversed its decision in Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), and held that municipalities are "persons" within the meaning of 42 U.S.C. Sec. 1983. Pursuant to Monell, municipal liability will attach when "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." 436 U.S. at 690, 98 S.Ct. at 2036. Less formal governmental actions may also result in liability if "practices of state officials [are] so permanent and well settled as to constitute a 'custom or usage' with the force of law." Id. at 691, 98 S.Ct. at 2036 (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 167-68, 90 S.Ct. 1598, 1613-14, 26 L.Ed.2d 142 (1970)).
 
 
 12
 The Court in Monell stressed the inapplicability of respondeat superior to Sec. 1983 lawsuits reasoning that a municipality can not be held liable simply for employing a tortfeasor because Sec. 1983 addresses actions which "subject or cause to be subjected," any person to the deprivation of federally protected rights. Municipalities do not cause deprivations simply by hiring tortfeasors, the Court reasoned. 436 U.S. at 691-92, 98 S.Ct. at 2036-37.
 
 
 13
 Given the Court's statement in Monell that the full contours of municipal liability were to be left for another day, id. at 695, 98 S.Ct. at 2038, it is not surprising that the Court has taken several opportunities to flesh-out its holding in Monell. It is with two of these cases that we are especially interested.
 
 
 14
 In Pembaur the Court granted certiorari to determine "whether, and in what circumstances, a decision by municipal policymakers on a single occasion" may result in municipal liability under Sec. 1983. The lower court in Pembaur held that a single unconstitutional act can not establish official policy. The Supreme Court reversed and set forth several guiding principles: First, a municipality may be held liable for actions which it "officially sanctioned or ordered." 475 U.S. at 480, 106 S.Ct. at 1298. Second, only officials possessing final policymaking authority can subject a municipality to Sec. 1983 liability. Id. at 483, 106 S.Ct. at 1300. Third, whether an official possesses final policymaking authority is a question of state law. Id. Finally, the official must possess final policymaking authority in the area in which the challenged conduct occurred. Id. at 483-84, 106 S.Ct. at 1300-01.
 
 
 15
 The Court illustrated the fourth principle as follows:
 
 
 16
 Thus, for example, the County Sheriff may have discretion to hire and fire employees without also being the county official responsible for establishing county employment policy. If this were the case, the Sheriff's decisions respecting employment would not give rise to municipal liability, although similar decisions with respect to law enforcement practices, over which the Sheriff is the official policymaker, would give rise to municipal liability. Instead, if county employment policy was set by the Board of County Commissioners, only that body's decisions would provide a basis for county liability. This would be true even if the Board left the Sheriff discretion to hire and fire employees and the Sheriff exercised that discretion in an unconstitutional manner; the decision to act unlawfully would not be a decision of the Board. However, if the Board delegated its power to establish final employment policy to the Sheriff, the Sheriff's decisions would represent county policy and could give rise to municipal liability.
 
 
 17
 Id. at 483 n. 12, 106 S.Ct. at 1300 n. 12 (emphasis in original).
 
 
 18
 The Court concluded that "municipal liability under Sec. 1983 attaches where--and only where--a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." Id. at 483-84, 106 S.Ct. at 1300.
 
 
 19
 This brings us to Praprotnik, the case in light of which we are to reconsider the City of Little Rock's liability. In Praprotnik the plaintiff, an employee of the City of St. Louis, filed a Sec. 1983 suit against the City alleging that his First Amendment rights had been violated when the City transferred and later layed him off in response to his appeal of an earlier suspension. A jury trial resulted in a verdict in favor of the plaintiff and the City appealed.
 
 
 20
 A panel of this court affirmed, holding that Praprotnik's immediate supervisors rather than the Civil Service Commission, established final policy with respect to his termination. Although Praprotnik had the right to appeal his transfer and termination to the commission, the "highly circumscribed scope of review" convinced this court that final policymaking authority actually rested with the supervisors. Praprotnik v. City of St. Louis, 798 F.2d 1168, 1175 (8th Cir.1986).
 
 
 21
 The Supreme Court granted certiorari and reversed and remanded. City of St. Louis v. Praprotnik, --- U.S. ----, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988). The majority concluded that the City's failure to exercise de novo review of the employment decisions did not render those decisions "final".
 
 
 22
 The Court began by reiterating that policymaking officials are to be identified by reference to state law. "Authority to make municipal policy may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority, and of course, whether an official has final policy-making authority is a question of state law." Id. 108 S.Ct. at 924 (quoting Pembaur, 475 U.S. at 483, 106 S.Ct. at 1300).
 
 
 23
 Many difficulties can arise, however, when policymaking authority is delegated from one official to another. When this happens, the Court stated, two guidelines should be followed: First, the Court reaffirmed the longstanding principle that municipalities may not insulate themselves from liability simply by delegating their policymaking to others because "a plaintiff may be able to prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a 'custom or usage' with the force of law.' " Id. 108 S.Ct. at 925-26 (quoting Adickes, 398 U.S. at 167-68, 90 S.Ct. at 1613-14).
 
 
 24
 Second, the Court noted that "the authority to make municipal policy is necessarily the authority to make final policy." Id. at 926 (emphasis in original). Further,
 
 
 25
 [w]hen an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the subordinate's departures from them, are the act of the municipality. Similarly, when a subordinate's decision is subject to review by the municipality's authorized policymakers, they have retained the authority to measure the official's conduct for conformance with their policies. If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final.
 
 
 26
 Id. (emphasis in original).
 
 
 27
 Guided by these principles the Court held that the City of St. Louis had not delegated final policymaking authority to Praprotnik's supervisors. "Simply going along with discretionary decisions made by one's subordinates * * * is not a delegation to them of the authority to make policy." Id. 108 S.Ct. at 927.
 
 
 28
 In light of the Supreme Court's decision in Praprotnik we hold that Sec. 1983 liability may be imposed upon the City of Little Rock in this case. We begin our analysis by noting that a very fine line exists between delegating final policymaking authority to an official, for which a municipality may be held liable, and entrusting discretionary authority to that official, for which no liability attaches. The distinction, we believe, lies in the amount of authority retained by the authorized policymakers. A clear message from Praprotnik is that an incomplete delegation of authority--i.e., the right of review is retained--will not result in municipal liability, whereas an absolute delegation of authority may result in liability on the part of the municipality.
 
 
 29
 We believe that this case clearly involves an absolute delegation of authority. Regarding employment matters in his court, Butler had been delegated carte blanche authority in 1969 and was exercising that authority when he hired and when he fired Williams. Thus, under state law Butler was exercising final policymaking authority in his court. Unlike the plaintiff in Praprotnik, Williams had no internal avenues of appeal available to challenge her termination; Butler's decision was final. We emphasize that Butler's authority was not constrained by any other policymaker. In fact, the City's original position in this tortuous litigation was that Butler alone controlled employment matters in municipal court. In the counterclaim the City stated, "The City of Little Rock has always agreed with the plaintiffs' contention that defendant Butler is responsible for hiring and terminating his chief clerk and deputy clerks." In its brief in support of a motion to dismiss the City argued that it was not empowered to hire or fire municipal court employees.
 
 
 30
 The City took a similar position in its responses to Williams's requests for admissions. For example, the City admitted that pursuant to Arkansas statute, Butler was granted authority to employ a chief clerk and two clerks and that the City did not participate in the employment process of Williams. The City also admitted that Butler had the sole authority to discharge his chief clerk or deputy clerks and to determine their working conditions. This is also supported by the Personnel Policies Statement for Little Rock Municipal Court Employees which exempts municipal court employees from the City's policy statements and treats municipal court employees differently and completely separate from any other municipal employee. Municipal court employees were placed under the exclusive jurisdiction of the municipal court judge for whom they worked.
 
 
 31
 The City now argues that although Butler may have been given the discretion to hire and fire his staff, he was never delegated final policymaking authority. "[T]o hold the City liable for Butler's acts, [Williams] had to prove that Butler was authorized by the City to fire an employee for attempting to uncover corruption," the City argues. This argument, we believe, graphically illustrates the City's misunderstanding of the requirements of municipal liability. Granted, if Williams had proved that the City, through its governing body, had authorized her termination, then the City would obviously be liable. But by delegating final policymaking authority to Butler the City exposed itself to liability for any unconstitutional actions taken by him pursuant to that authority. See Pembaur, 475 U.S. at 480-81, 106 S.Ct. at 1298-99. It begs the question to say that because the City did not expressly authorize Williams's termination the City can not be held liable. Because he was given final policymaking authority, Butler was, in effect, the City; his actions were the City's actions. The Court in Pembaur stated that "[t]he 'official policy' requirement was intended to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." Id. at 479-80, 106 S.Ct. at 1298 (emphasis in original). In the instant case the City of Little Rock is liable because it, through Butler, fired Williams. As the elected official acted so did the municipality.
 
 
 32
 Another predicate for the City's liability is that the Arkansas General Assembly, Ark.Stat.Ann. Sec. 22-704.1(45) (Supp.1985), authorized municipal judges to employ persons to fill staff positions in that court.[2] As noted in Pembaur at 483, 106 S.Ct. at 1300 "authority to make municipal policy may be granted directly by legislative enactment." This places municipal judges in the City of Little Rock as the official policymaker in hiring and firing staff. And, Butler in his official capacity as a municipal judge was exercising traditional municipal functions. It does appear both by legislative enactment and by a long established custom and practice that Butler was the official policymaker for the hiring and firing of his staff.
 
 
 33
 We stress that our holding does not impose liability upon the City on the theory of respondeat superior. The City granted Butler absolute authority to determine and administer employment policy in his court, a municipal court exercising traditional municipal functions. Because of this grant of authority the City may properly be held liable for the illegal discharge of Williams.
 
 III. CONCLUSION
 
 34
 Because we hold that Butler possessed final policymaking authority with respect to employment matters in the municipal court, and because he was exercising that authority when he illegally discharged Williams, we affirm the order of the district court holding the City of Little Rock liable.
 
 
 35
 BEAM, Circuit Judge, concurring.
 
 
 36
 The holdings in Pembaur v. City of Cincinnati, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986), and City of St. Louis v. Praprotnik, --- U.S. ----, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988), direct us to look to "state law (which may include valid local ordinances and regulations)," Praprotnik, 108 S.Ct. at 924, for final employment policymaking authority. The only local ordinance or regulation related to the acts in question in this case appears to be the enactment which established the Little Rock Municipal Court. Thus, we look to the Constitution of Arkansas and the Arkansas General Assembly for guidance.
 
 
 37
 Section 1, Article 7 of the Constitution of Arkansas vests the judicial power of the state in the Supreme Court, circuit courts, county and probate courts and justices of the peace. The Constitution also empowers the General Assembly to "vest such jurisdiction as may be deemed necessary" in municipal courts.
 
 
 38
 In response to this grant of authority, the Arkansas legislature has permitted certain cities, including the City of Little Rock, to establish municipal courts by the passage of an ordinance by the governing body of the City. See, e.g., Ark.Code Ann. Secs. 16-17-204 and 16-17-303 (1987).
 
 
 39
 The General Assembly has also acted directly with regard to employment matters affecting the municipal courts. On May 11, 1981, when Ms. Williams was discharged, the applicable Arkansas statute read, in pertinent part, as follows:
 
 
 40
 The Judge of the 2nd Division [the court involved here] is authorized to employ a chief clerk and two (2) clerks * * *. Said clerks shall receive such salary as may be prescribed by the governing body of the city of Little Rock, but in no event shall the salary of * * * each * * * clerk be not less than twelve thousand two hundred one dollars ($12,201.00) nor more than * * *.
 
 
 41
 Ark.Stat.Ann. Sec. 22-704.1(44) (Supp.1981).
 
 
 42
 This circuit, in applying an Arkansas statute in similar circumstances, has stated that when an official is vested with the right to hire, he or she also has "the concomitant duty to fire * * * employees." Horton v. Taylor, 767 F.2d 471, 474 (8th Cir.1985). Therefore, under state statute (and not through a delegation of authority from another City entity with employment policy powers) we know that Judge Butler had final authority to hire and fire Ms. Williams. And, it is the exercise of this discharge power that is at issue in this case.
 
 
 43
 Further, a review of the Constitution of Arkansas and the statutes promulgated by the General Assembly establishes that the judicial power of the municipal courts, including employment policy power, has been carefully separated from the legislative and executive power of other governmental bodies within municipal corporations. In the employment area, for example, the statutes read, in pertinent part, as follows:
 
 
 44
 (a) The seven (7) directors elected by a city reorganized under [a city manager form of government] shall be known and designated as "the Board of Directors" of said city. The Board of Directors shall constitute the supreme legislative and executive body of the city * * *.
 
 
 45
 Ark.Stat.Ann. Sec. 19-704 (1980) (codified as Ark.Code Ann. Sec. 14-47-110 (1987)) (emphasis added).
 
 
 46
 The City Manager shall have the following powers and duties:
 
 
 47
 (a) To the extent that such authority is vested in him through ordinance enacted by the Board of Directors, he may supervise and control all administrative departments, agencies, offices and employees;
 
 
 48
 * * *
 
 
 49
 * * *
 
 
 50
 (d) He shall nominate, subject to confirmation by the Board of Directors, persons to fill all vacancies at any time occurring in any office, employment, board, authority or commission to which the Board's appointive power extends. He may remove from office all officials and employees (including, without limiting the foregoing, members of any board, authority or commission) who under existing or future laws, whether applicable to cities under the aldermanic or management form of government, may be removed by the city's legislative body, provided such removal by the City Manager is approved by the Board of Directors; but where, under the statute applicable to any specific employment or office, the incumbent may be removed only upon the vote of a specified majority of the city's legislative body, the removal of such person by the City Manager may be confirmed only upon the vote of such specified majority of the Board members. However, the provisions of this paragraph (d) shall have no application to offices and employments controlled by any Civil Service or merit plan lawfully in effect in the city; moreover, in cities maintaining Municipal Courts and/or Police Courts under the authority of any statute now in effect or hereafter enacted, the Municipal Judge, Police Judge and the Clerk of any such court shall be elected and appointed in the manner now or hereafter prescribed by law.
 
 
 51
 Ark.Stat.Ann. Sec. 19-712 (1980) (codified as Ark.Code Ann. Sec. 14-47-120 (1987)) (emphasis added).[1]
 
 
 52
 As earlier indicated, under state statute, the judge, a judicial officer of the judicial branch of the City of Little Rock--and not the board of directors or the city manager--has, at least in matters of hiring and firing, final authority over individuals serving as clerks of court. Therefore, here, for the purposes of 42 U.S.C. Sec. 1983, the acts of Judge Butler were the acts of the City. Thus, the City is liable for the damages established by Ms. Williams.
 
 
 53
 JOHN R. GIBSON, Circuit Judge, with whom McMILLIAN, BOWMAN, WOLLMAN and MAGILL, Circuit Judges, join, dissenting.
 
 
 54
 After two appeals in this court and after two orders of remand by the Supreme Court, we stand essentially in the same position as we did after the first appeal. The vexing issue before us is distinguishing the municipal judge's role as a final decision-maker from that of a final policy-maker. There is no doubt that Judge Butler was the final decision-maker with respect to the discharge of Debbie Williams. I respectfully dissent from the court's decision today, however, in its conclusion that Judge Butler was vested with final policy-making authority in the employment field.
 
 
 55
 To observe the unchanging nature of the appeal, we need only examine the earlier statements in the dissenting opinions in this case. In the first appeal Judge McMillian, in his dissent, stated:
 
 
 56
 As the majority noted, the Supreme Court held in Monell that local governments can be sued directly under 42 U.S.C. Sec. 1983 where "the action that is alleged to be unconstitutional implements or executes a governmental policy statement or custom." [436 U.S.] at 690-91 [98 S.Ct. at 2035-36]. My disagreement with the majority lies in its interpretation of the following critical and oft-cited sentence from Monell: "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under Sec. 1983." Id at 694 [98 S.Ct. at 2037-38]. I do not read the Court's words here, as the majority apparently does, to declare that any act of a city official to whom the city gave the discretion and final say-so to take such action, automatically becomes city policy, no matter how aberrant or personally motivated such action may be.
 
 
 57
 I fully agree with the majority that city policy or custom may, under certain circumstances, be made by individual officials, but I believe that the focus must always be whether the injury-inflicting act was a city policy or custom. Thus, it is actions taken by officials pursuant to delegated policymaking authority, as opposed to mere decisionmaking authority, that can subject the city to Sec. 1983 liability.
 
 
 58
 In the present case, there was no evidence that Butler was delegated authority to set city personnel policy. Nor was it alleged that termination of employees who testified before a grand jury about their supervisors' alleged misconduct was a city custom.[1]
 
 
 59
 1. I believe that the majority incorrectly analyzed the "custom" element of Monell. The question is not whether Butler "customarily" hired and fired his own staff, but whether the constitutional injury-inflicting act, i.e., firing an employee in violation of her first amendment rights, was a city custom.
 
 
 60
 The evidence only established that Butler had discretion to hire and fire his own personal staff and that termination of Williams was the result of a personal vendetta and not the result of a decision made on behalf of the city. I conclude that under the particular facts of this case, Sec. 1983 liability cannot be imposed on the city purely on the basis of Butler's act.
 
 
 61
 Williams v. Butler, 746 F.2d at 444 (emphasis and footnote in original).
 
 
 62
 After remand by the Supreme Court for consideration in light of Pembaur, Judge Ross, in his dissent to the second decision by this court en banc, referred to Judge McMillian's conclusion set forth above and stated:
 
 
 63
 Because there is insufficient evidence to support a finding that Butler had the authority to make final employment policy for the City, as opposed to mere final employment decisions for the City, the City cannot be held liable for Butler's decision to fire Williams.
 
 
 64
 Even if Butler had somehow been given authority to make employment policy for the City, the facts in this case do not support a conclusion that Butler's vengeful and self-motivated decision to fire Williams actually created employment policy for the City.
 
 
 65
 Williams v. Butler, 802 F.2d 296 at 303 (emphasis in original). Now, after Praprotnik, the court continues to hold that Judge Butler was vested with final policy-making authority. In spite of the district judge's determination to this effect, I believe that this conclusion is unsupported.
 
 
 66
 Praprotnik emphasizes the importance of municipal policy. In outlining the four requirements of Pembaur, Justice O'Connor, in her plurality opinion, states:
 
 
 67
 First, a majority of the Court agreed that municipalities may be held liable under Sec. 1983 only for acts for which the municipality itself is actually responsible, "that is, acts which the municipality has officially sanctioned or ordered." 475 U.S., at 480, 106 S.Ct., at 1298. Second, only those municipal officials who have "final policymaking authority" may by their actions subject the government to Sec. 1983 liability. Id., at 483, 106 S.Ct., at 1300. Third, whether a particular official has "final policymaking authority" is a question of state law. Ibid. Fourth, the challenged action must have been taken pursuant to a policy adopted by the official or officials responsible under state law for making policy in that area of the city's business. Id., at 482-483, and n. 12, 106 S.Ct., at 1299-1300, and n. 12.
 
 
 68
 City of St. Louis v. Praprotnik, 108 S.Ct. at 924 (emphasis in original). Justice O'Connor's opinion continues:
 
 
 69
 The city cannot be held liable under Sec. 1983 unless respondent proved the existence of an unconstitutional municipal policy. * * * The mayor and aldermen enacted no ordinance designed to retaliate against respondent or against similarly situated employees.
 
 
 70
 Id. at 926. In discussing Civil Service Commission review of the employment decision at issue in Praprotnik, Justice O'Connor states:
 
 
 71
 It would be a different matter if a particular decision by a subordinate was cast in the form of a policy statement and expressly approved by the supervising policymaker. It would also be a different matter if a series of decisions by a subordinate official manifested a "custom or usage" of which the supervisor must have been aware.
 
 
 72
 Id. at 927.
 
 
 73
 In the case before us, the farthest reach of Arkansas law is to place final decision-making authority as to hiring and firing in the hands of the municipal judge. Nothing grants to the municipal judge final policy-making authority in these employment matters. Neither the court's opinion today nor the concurring opinion establishes a source for any such authority. Finally, nothing in the record indicates that the judge's decision was cast as a policy statement, was condoned by those who were delegated policy-making authority by the City of Little Rock, or constituted part of a larger series of decisions manifesting a "custom or usage" of which such policy-makers must have been aware. The result is that the city has been held liable on no more than the theory of respondeat superior. I would reverse the judgment against the city.
 
 
 
 [1]
 Suits brought against individuals in their official capacities are, in essence, suits against the city. See Monell v. Department of Soc. Servs., 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 2035 n. 55, 56 L.Ed.2d 611 (1978)
 
 
 [2]
 "The Judge of the Second Division [of the Little Rock Municipal Court] is authorized to employ * * * one Chief Court Clerk * * * [and] * * * two Court Clerks." Ark.Stat.Ann. Sec. 22-704.1(45) (Supp.1985)
 
 
 [1]
 The dissent, interestingly, concludes that "the farthest reach of Arkansas law" places only hiring and firing authority over court clerks in the hands of the municipal judge. No reference is made to, and I cannot find, a state statute or city ordinance which places "final policymaking authority" in any other hands. In fact, state statute explicitly keeps it out of any other hands. In any event, this case deals with a wrongful discharge. Final employment policy authority over other aspects of the work place, even if it reposes elsewhere, is of little relevance under the facts of this case