198 F.3d 779 (9th Cir. 1999)
 STEPHEN M. KELLY, Plaintiff-Appellee,
v.
CITY OF OAKLAND, a municipal corporation; KENT MCNAB; RICHARD WIRKKALA, Defendants-Appellants,
and
ANTONIO ROMERO; DOUGLAS ANDERSON; JOSEPH SAMUELS, JR., Defendants.
STEPHEN M. KELLY, Plaintiff-Appellee,
v.
CITY OF OAKLAND, a municipal corporation; KENT MCNAB; RICHARD WIRKKALA, Defendants-Appellants.
 Nos. 98-16482, 98-16684
 U.S. Court of Appeals for the Ninth Circuit
 Argued and Submitted August 9, 1999
Filed November 23, 1999
As Amended January 12, 2000
 
 [Copyrighted Material Omitted]
 COUNSEL: Randolph W. Hall, Assistant City Attorney, Oakland, California; Ines V. Fraenkel, Deputy City Attorney, Oakland, California; Stanford Svetcov, Landels Ripley & Diamond, San Francisco, California; Howard A. Simon, Landels Ripley & Diamond, San Francisco, California, for defendants-appellants City of Oakland, Kent McNab and Richard Wirkkala.
 Norman I. Lustig, Walnut Creek, California, for plaintiff-appellee Stephen M. Kelly.
 Steen B. Fisher, Daar, Fischer, Kanarais & Vanek, P.C., Michael H. Williamson, Madden, Poliak, Macdougll & Williamson, Chicago, IL, for All Alaskan Seafoods and AAS-DMP.
 Appeals from the United States District Court for the Northern District of California; Laughlin E. Waters, District Judge, Presiding. D.C. No. CV-95-00969-LEW, CV-95-02455-LEW
 Before: John T. Noonan, David R. Thompson and Susan P. Graber, Circuit Judges.
 OPINION
 NOONAN, Circuit Judge:
 
 
 1
 The City of Oakland (the City), Kent McNab and Richard Wirkkala appeal the judgment of the district court against them in favor of Stephen M. Kelly after a jury trial. At the center of the case is Kelly's contention that McNab sexually harassed him. A federal right to be free of same-sex harassment in the form of a hostile environment was not established in the period 1989-1993 covered by Kelly's complaint. We must, therefore, reverse the judgment against McNab and Wirkkala to the extent that it rests on violations of 42 U.S.C. SS 1983 and 1985 predicated on same-sex harassment in the form of a hostile work environment. The City, however, is not entitled to qualified immunity for these violations.
 
 
 2
 Same-sex harassment in the form of a request for sexual favors on a quid pro quo basis, however, was a clear violation of federal law at all relevant times. On that basis we sustain the judgment against McNab for violations of 42 U.S.C. SS 1983 and 1985. We also affirm the judgment of punitive damages against McNab. The general verdict of the jury embraced Kelly's causes of action against the City under 42 U.S.C. S 2000(e) et seq. (Title VII) and under the California Fair Employment and Housing Act (FEHA), Cal. Gov't Code S 12900 et seq. The general verdict also embraced Kelly's FEHA claim against McNab. We hold that substantial evidence supports the verdicts on these claims and that the jury was not confused by the presence of the civil rights claims. We accordingly affirm the judgment against the City and against McNab on these grounds as well. We reverse the judgment against Wirkkala. We remand for determination of the attorney's fees to be awarded Kelly.
 
 PROCEEDINGS
 
 3
 On May 12, 1994, Kelly filed charges against the defendants with the California Department of Fair Employment and Housing and with the Equal Employment Opportunity Commission. After these proceedings, Kelly on March 21, 1995, brought suit against the City; against Wirkkala, the Chief Park Ranger of the City; against McNab, an Acting Senior Park Ranger who became a permanent Senior Park Ranger supervising Kelly in July 1992; against Joseph Samuels, Jr., Chief of Police of the City; and against two other defendants later exonerated. Kelly had been a Park Ranger since 1985 and in that capacity had become a member of the City's Police Department. He alleged that after he had separated from his wife in 1989, McNab had begun to harass him sexually; that he had complained to Wirkkala, who did nothing about it; that in August 1993 he resigned, informing Chief Samuels of the reason for his resignation; and that in January 1994 he unsuccessfully sought reinstatement. He asserted deprivation of his civil rights in violation of 42 U.S.C. S 1983 and conspiracy to deprive him of these rights contrary to 42 U.S.C.SS 1985 and 1986; employment discrimination and retaliation in violation of FEHA; and intentional infliction of emotional distress and invasion of privacy.
 
 
 4
 On July 9, 1995, Kelly filed a second complaint against the City, McNab, Wirkkala and Does One Through Ten alleging the same facts and charging sexual harassment, discharge, refusal to reinstate, and retaliation all in violation of Title VII. On December 9, 1996, the two cases were consolidated.
 
 
 5
 On April 23, 1997, the district court granted summary judgment to the two defendants not involved in this appeal; summary judgment to the remaining defendants on the charges of intentional infliction of emotional distress and invasion of privacy; summary judgment to Samuels and Wirkkala on the charge of violating the FEHA; and summary judgment to McNab and Wirkkala on the Title VII claim.
 
 
 6
 On July 23, 1997, the court granted certain of the defendants' in limine motions. The court ruled that "terms such as `sexual harassment' and `discrimination' " should not be used by lay witnesses and that Dr. James Missett, an expert in psychiatry, might testify "about sexual harassment generally" but might not "characterize any behavior of McNab's as constituting sexual harassment." The court also excluded evidence of Kelly's employment and termination, after his resignation in Oakland, by the Berkeley Police Department.
 
 
 7
 Evidence before the jury was as follows: Nearly every working day McNab would watch Kelly in the locker room change from his civilian clothes to his underwear to his uniform. McNab said nothing, and he was not in Kelly's direct line of vision. Each day he would stare at Kelly and no one else. The practice began in 1989 after Kelly had separated from his wife and continued until August 1993 when Kelly resigned. Other officers told Kelly of McNab's practice. "You could set your watch" by McNab's arrival to watch Kelly.
 
 
 8
 In a variety of other ways McNab showed an interest in Kelly. He gave Kelly (and no other ranger) "a fairly expensive" Parker knife as a Christmas present. He insisted that Kelly take meal breaks and short breaks with him. He once arrived uninvited at Kelly's parents' home and twice drove by Kelly's girlfriend's house when Kelly was there. He turned on the spotlight of his patrol car on Kelly when Kelly was on night surveillance with a female officer of the Park Rangers. He called Kelly at home 20 to 30 times; Kelly did not return such calls. McNab called Kelly frequently and unnecessarily on the radio when both were on duty. McNab followed Kelly in another patrolcar unnecessarily. McNab sent Kelly's patrol car for service so that Kelly would have to double up with him in his car. McNab called Kelly for cover when no cover was needed. When Kelly bought a motorcycle, McNab bought one too, telling Kelly, "I thought that we could ride together." McNab changed Kelly's work schedule so that Kelly and he would work together. All these attempts to be near Kelly were in the face of Kelly's repeated and vehement indications to McNab that Kelly wanted nothing to do with him socially.
 
 
 9
 Kelly believed that McNab was sexually harassing him. Other rangers in Kelly's hearing referred to McNab as a homosexual; one of them suggested to Kelly that what McNab wanted was sex with Kelly. A female police officer testified that she believed McNab was pushing himself on Kelly.
 
 
 10
 Kelly twice received the rating of "exceptional " in his job, but when he was rated by McNab on May 31, 1993, he received only a rating of "standard." McNab delivered this evaluation to Kelly. The following exchange took place:
 
 
 11
 McNab: "Now, what can we do to turn this around?"
 
 
 12
 Kelly: "Honestly? Leave me alone."
 
 
 13
 McNab: "Well, that's not going to happen. So what else can we do?"
 
 
 14
 Kelly complained to two immediate supervisors and to Wirkkala about McNab's phone calls and once about McNab calling him at work. The departmental secretary told two senior rangers at least 50 times of McNab's staring at Kelly and told Wirkkala five to ten times of McNab's habit. Two rangers also brought the problem to Wirkkala's attention. Wirkkala brushed off all these warnings. Wirkkala's diary contains four references to the information he received, three times describing the reported behavior as "harassment." No effective action was taken to prevent McNab's attentions to Kelly. In August 1993, Kelly sent a letter of resignation to Chief Samuels, stating it was because of "increasingly difficult and hostile working conditions" caused by a senior ranger.
 
 
 15
 At the conclusion of Kelly's case, the defendants moved pursuant to Federal Rule of Civil Procedure 50(a) to dismiss Kelly's Title VII and FEHA claims on several grounds, among them that same-sex harassment was not sexual harassment within the meaning of the statutes, and to dismiss the claims of conspiracy for lack of evidence. The district court denied these motions. At the conclusion of the defendants' case, they asked for a jury instruction that they were not liable if "they reasonably believed their actions were lawful, and that they acted in good faith on the basis of that belief." The court ruled that "qualified immunity" was a question of law to be decided by the court not the jury. The defendants excepted to the denial of the instruction but did not ask the court to rule on whether they were entitled to qualified immunity.
 
 
 16
 On August 12, 1997, after a ten day trial, the jury returned its verdict. To the question, "Is the defendant liable to plaintiff on any of the following claims: sexual harassment, constructive discharge, retaliation, violation of civil rights and/or conspiracy?" the jury answered, "Yes," as to the City. The jury answered the same question, minus the reference to constructive discharge, affirmatively as to McNab. The jury answered, "Yes" as to whether Wirkkala was liable for violation of Kelly's civil rights and/or conspiracy and "No" as to Samuels' liability for these torts. After a separate trial as to damages the jury found that Kelly had incurred $380,000 in damages, caused in part by McNab and in part by Wirkkala. It imposed $35,000 in punitive damages on McNab.
 
 
 17
 The defendants moved under Federal Rule of Civil Procedure 50(b) for judgment as a matter of law both as to liability and as to the punitive damages; they moved under Rule 59 for a new trial. On July 3, 1998, the district court denied these motions. The court noted that the motion forjudgment of no liability as a matter of law asserted the defense of qualified immunity, and that ground had not been asserted in the defendants' Rule 50(a) motion made before the jury deliberated. The court held the Rule 50(b) motion, therefore, to be procedurally barred. The court further ruled that a reasonable official between 1989 and 1993 should have understood that sexual harassment of any type violated the law. The motion for a new trial was based on the court's use of a general verdict and on several evidentiary rulings. The court found that the jury had not been confused by the general verdict form and that substantial evidence supported each of Kelly's five alternative theories of liability. The court found no error in its evidentiary rulings and, if there was error, it was harmless. The court held there was clear and convincing evidence to support the award of punitive damages against McNab.
 
 
 18
 Kelly moved for attorney's fees in the amount of $765,130. Over the defendants' opposition, the court found that the 1,074.4 hours claimed were reasonable and that the defendants' contention that the plaintiff had only "limited success" was not warranted. The court examined evidence submitted by both sides of prevailing community rates and took into account the plaintiff's attorney's twenty years of experience in labor and employment law, his extensive trial experience, the skill and professionalism he demonstrated in the course of the trial, and "the additional difficulty involved in effectively managing and trying this case as a sole practitioner," and set his fee at the rate of $350 per hour. The court found that the lawyer had been precluded from taking on other clients during the year preceding the trial and that an enhancement was also warranted to compensate him "for taking on a difficult, novel, and possibly undesirable case." For these reasons the court found the case exceptional, justifying the application of a multiplier of 1.5 to the lodestar hourly rate, resulting in an attorney's fees award of $564,060 under federal law.
 
 
 19
 The defendants appeal.
 
 ANALYSIS
 
 20
 Liability. The defendants' qualified immunity defense was denied by the district court because it was not preceded by a Rule 50(a) motion. See Johnson v. Armored Transp. of Cal., 813 F.3d 1041, 1043 (9th Cir. 1987). We have, however, occasionally reviewed for plain error even when no motion for judgment as a matter of law was made. See, e.g., Slomon v. Tadlock, 21 F.3d 1462, 1473 (9th Cir. 1974); Kreines v. United States, 959 F.2d 834, 836 (9th Cir. 1992). In the interest of justice, we undertake such review here as to McNab and Wirkkala. The City is not entitled to claim qualified immunity. See Owen v. City of Independence, 445 U.S. 622, 651 (1980).
 
 
 21
 Whether a particular federal right was clearly established at a particular time presents a pure question of law which must be resolved de novo on appeal. See Elder v. Holloway, 510 U.S. 510, 516 (1994). A federal right to be free of same-sex harassment in the form of a hostile environment had not been established in the period 1989-1994. See Blueford v. Prunty, 108 F.3d 251 (9th Cir. 1997). Consequently, neither Wirkkala nor McNab can be held liable for same-sex harassment in the form of a hostile environment. However, Kelly's case against McNab rested also on his claim that McNab bargained with him by offering a better official evaluation in return for sexual favors. Evidence of this bargaining was afforded by Kelly's testimony and was sufficient to prove quid pro quo harassment. See Nichols v. Frank, 42 F.3d 503, 511 (9th Cir. 1994).
 
 
 22
 The federal right to be free from such demeaning demands was clear without need for a specific holding by a court that such conduct violated an employee's civil rights. Where unlawfulness is apparent, qualified immunity does not exist. See United States v. Lanier, 117 S. Ct. 1219, 1227 (1997). As early as 1987, the Supreme Court had ruled on a sex discrimination claim without attaching importance to employer and employee being of the same gender. See Johnson v. Transportation Agency, 480 U.S. 616 (1987). In distinction from cases of sexual harassment based on a hostile environment where "the state and federal courts have taken a bewildering variety of stances," courts "have had little trouble" in finding liability for quid pro quo harassment involving persons of the same gender. Oncale v. Sundowner Servs., Inc., 118 S. Ct. 998, 1002 (1998). In short, McNab had fair warning from the statute that to use his position as a supervisor to attempt to extract sexual compliance from Kelly was a breach of federal law for which he has no immunity.
 
 
 23
 As this aspect of McNab's conduct was not reported to Wirkkala or to any other official, McNab's liability does not justify liability for the City or for Wirkkala. As Wirkkala was granted summary judgment under the FEHA, he is without liability in this case.
 
 
 24
 The defendants also argue that the jury's general verdict cannot stand. See Sunkist Growers, Inc. v. Winckler & Smith Citrus Prods. Co., 370 U.S. 19, 29-30 (1962); Kern v. Levolor Lorentzen, Inc., 899 F.2d 772, 777 (9th Cir. 1990). But, by the criteria set out in Kern, the general verdicts must be upheld: (1) there was little or no potential for jury confusion; (2) the defendants' defenses did not apply to the claims being sustained; (3) evidence strongly supported these claims; and (4) the same basic facts were at issue as to each claim with the exception that intention was not an issue as to the Title VII and FEHA claims. McNab does not challenge his liability under FEHA, nor does the City deny on appeal that there was evidence supporting its liability under FEHA and Title VII. The defense of McNab and the City to the civil rights claims was their absence of intent to violate an established right. The defense does not hold as to FEHA and Title VII. Apart from intent, the same basic facts were at issue. McNab's behavior in context was considerably more offensive than breach of a civility code. See Oncale, 118 S. Ct. at 1002-03. When it was the behavior of an immediate supervisor in a police unit that required its members to work together, a jury could find that his conduct went well beyond the adolescent or boorish. In its dumb intensity and unremitting continuity over almost four years, it made Kelly's workplace nightmarish and his professional life as a policeman intolerable. Accordingly, the case is appropriate for an exercise of discretion to construe the general verdicts to be supported by viable theories of liability. See Kern, 899 F.3d at 777.
 
 
 25
 The City argues that neither by policy or by policy-maker did it ratify McNab's behavior. See Monell v. Department of Soc. Servs. of New York, 463 U.S. 658 (1978). The City's Monell defense appeared for the first time in its Rule 59 reply brief. It was far too late. A defendant in a civil action cannot wait until the last brief before the district court to present a defense which, if properly placed in issue, would have affected the course of the jury trial. See Desrosiers v. Flight Int'l of Fla., Inc., 156 F.3d 952, 957 (9th Cir.), cert. denied, _______ U.S. _______, 119 S. Ct. 634 (1998); cf. Officers for Justice v. Civil Serv. Comm'n of San Francisco, 979 F.2d 721, 72526 (9th Cir. 1992), cert. denied sub nom., San Francisco Police Officers Ass'n v. City and County of San Francisco, 507 U.S. 1004 (1993). There was some evidence supporting the City's liability because of Chief Samuels' failure to respond to Kelly's letter. See Fuller v.City of Oakland, 47 F.3d 1522, 1534 (9th Cir. 1995).
 
 
 26
 Punitive Damages. Punitive damages were awarded against McNab pursuant to a jury instruction to which he did not object. His Rule 50(a) motion failed to give any valid reason why the punitive damage award should be set aside; his Rule 50(b) motion could not do more than his Rule 50(a) motion had done. See Lambert v. Genesee Hosp. , 10 F.3d 46 (2d Cir. 1993), cert. denied, 511 U.S. 1052 (1994). We have no reason to grant plain error review. Punitive damages, normally within the jury's purview, were not without substantial evidence to support them, as our discussion of McNab's conduct has already made clear.
 
 
 27
 New Trial. The defendants seek a new trial because they contend that the district court erred in certain evidentiary rulings. First, they attack the court's exclusion of evidence relating to Kelly's experience in seeking a position with the Police Department of Berkeley in 1994. At trial Kelly testified that he had not pursued this course because the Berkeley job "was not what he had expected." On cross-examination he was asked, "Isn't it true that you wanted to return to the park rangers because you had been terminated by the Berkeley Police Department?" The court excluded the question as a violation of its in limine order. Kelly's employment experience in Berkeley could not be admitted "to prove anything with respect to his qualifications as a park ranger."
 
 
 28
 As the defendants argue, the excluded question did not fall within the terms of the in limine order. The question was designed to show that Kelly had not been forthcoming in giving his reasons for quitting Berkeley and trying to return to Oakland. The question, if answered, would not have shown Kelly to be a liar, only less than candid. Kelly's credibility in general was important to his case, but the defendants did not show any serious factual dispute about the incidents of harassment to which he testified. Consequently the error in excluding the question was harmless.
 
 
 29
 The defendants object to testimony that they contend violated the in limine ruling forbidding the use of terms "such as `sexual harassment' and `discrimination' " by lay witnesses and precluding Dr. Missett from characterizing McNab's behavior as constituting sexual harassment. No objection was made at trial to the admission of the testimony, which was objected to only in the defendants' Rule 50(b) motion. The objections came too late to advise the court that the defendants believed its orders were being ignored or that its orders should be amplified beyond what they forbade. Objections to evidence must be made contemporaneously. See Fed. R. Evid. 103(a) & (d); United States v. Newman, 6 F.3d 623, 629 (9th Cir. 1993) ("We review the district court's admission of the evidence for plain error because Newman withdrew his objection and therefore failed to make a contemporaneous objection."). Moreover, the conclusory phrases "sexual harassment" or "discrimination" were not used by the witness. The district court did not abuse its discretion in denying a new trial. See Desrosiers, 156 F.3d at 957.
 
 
 30
 Attorney's Fees. The district court followed the rules governing the calculation of fees with these exceptions: First, under federal law the novelty and complexity of the case are subsumed in the reasonable fee determination and should not be counted twice by incorporation into the multiplier. See Stewart v. Gates, 987 F.3d 1450, 1453 (9th Cir. 1993). Second, there was evidence that Kelly's attorney lost only one client by taking his case; it should not have been presumed that for a whole year he could not have taken other clients; again, the multiplier was inflated. Third, the multiplier should not have been applied to the hours spent on the fee application. See Clark v. City of Los Angeles, 803 F.2d 987, 992 (9th Cir. 1991). Thedistrict court will need to redetermine the fees.
 
 
 31
 Other Issues. The defendants' objection to the interim fee awards is mooted by this opinion. Kelly's objection to the notice of appeal of the two consolidated cases is without merit.
 
 
 32
 Conclusion. The judgment of the district court is AFFIRMED as to the liability of McNab under S 1983 and S 1985 and under the FEHA and for punitive damages, and as to the liability of the City under SS 1983, 1985, Title VII and the FEHA. The judgment against Wirkkala is REVERSED. The award of attorney's fees is REMANDED for recalculation.