# United States Court of Appeals

## For the First Circuit

---

Nos. 00-1840
     00-1996

CRAIG CHESTNUT,

Plaintiff, Appellee,

v.

CITY OF LOWELL,

Defendant, Appellant.

---

APPEALS FROM THE UNITED STATES DISTRICT OCURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Rya W. Zobel, U.S. District Judge]

---

Before

Boudin, Chief Judge,
Torruella and Selya, Circuit Judges,
Cyr, Senior Circuit Judge,
Lynch, Lipez and Howard, Circuit Judges.

---

Thomas E. Sweeney, City Solicitor, with whom Christine P. O'Connor, Assistant City Solicitor, was on brief for appellant. Daniel S. Sharp with whom Elaine Whitfield Sharp, Whitfield Sharp and Sharp and Randy M. Hitchcock were on brief for appellee.

---

EN BANC OPINION
September 20, 2002

---

Per Curiam. Defendant the City of Lowell ("City"), claiming immunity to punitive damages under City of Newport v. Fact Concerts, Inc., 453 U.S. 247 (1981), appeals from a judgment of punitive damages in a suit filed under 42 U.S.C. § 1983 (2000). A divided panel of this court affirmed on March 29, 2002, agreeing with the district court that the City's objection had been waived. We vacated the panel opinion pending rehearing en banc, and now reverse. The facts taken in the light most hospitable to the verdict winner, Nat'l Ass'n of Soc. Workers v. Harwood, 69 F.3d 622, 625 (1st Cir. 1995), are as follows.

On February 7, 1997, Craig Chestnut and his wife went to a bar in Lowell, Massachusetts. City police officers Steven Coyle and Stephen Ciavola were also present when Chestnut became embroiled in a fracas. Coyle arrested and handcuffed Chestnut and removed him from the bar, whereupon Ciavola struck Chestnut in the face, knocked him to the ground and kicked him in the face. As a result of Ciavola's violent conduct, Chestnut required fourteen stitches around his right eye, which is permanently damaged. This injury impairs Chestnut's long-range depth perception and precludes him from earning a living as a crane operator, as he did previously.

Chestnut filed suit under 42 U.S.C. § 1983 together with supplemental state law negligence claims against the City, Coyle and Ciavola, alleging inter alia that (1) Ciavola used excessive force against him; (2) Coyle, after having taken Chestnut into police custody, failed to protect him; and (3) the City improperly

-2-

hired and retained Ciavola, who had an extensive criminal record (including convictions for assault and battery) and was, at the time of hire, the subject of an active arrest warrant for failure to appear in court for violating his probation.

As the trial drew to a close, the district court held a conference with the attorneys on May 22, 2000 to discuss jury instructions and the verdict form, which included a question on punitive damages. The court raised with counsel the appropriateness of a punitive damages award under section 1983. Chestnut's attorney replied that such an award was appropriate, and the City's counsel did not respond to the judge's inquiry or take issue with opposing counsel's response. In due course, the trial judge instructed the jury, without objection, that it could award punitive damages against each defendant, including the City, as to the section 1983 claim.

On May 23, the jury returned a verdict for Chestnut on both the negligence and section 1983 counts against Ciavola and the City. The jury did not find Coyle liable on either count; it awarded Chestnut $750,000 in damages: $500,000 in punitive damages against the City, $40,000 in punitive damages against Ciavola, and $210,000 in compensatory damages against both of these defendants jointly and severally. The district court entered judgment, again without objection from the City.

Finally awakening to its oversight of City of Newport on May 25, the City filed a motion for a new trial, or, in the alternative, to strike the $500,000 of punitive damages. At a

-3-

motion hearing on July 12, 2000, the district court, ruling from the bench, denied the City's motion. Although recognizing that an award of punitive damages against a municipality was indeed error in light of City of Newport, the district court found that the City's failure to interpose a timely objection under Fed. R. Civ. P. 51 waived its immunity. These appeals followed.[1]

In relying upon "waiver," the district court assuredly did not mean that the City knowingly relinquished its immunity under City of Newport to punitive damages; there is no evidence whatsoever that the City's counsel knew of City of Newport. Rather, the district judge clearly meant, in the term used in United States v. Olano, 507 U.S. 725, 733 (1993), that the City had "forfeited" its objection through ignorance or neglect. Although most judges, and many Supreme Court decisions, continue to use the term "waiver" to cover both situations, the distinction is important in this case and we will follow Olano's convention in this instance.

Failures to object, unless a true waiver is involved, are almost always subject to review for plain error. This is so even in the case of jury instructions where Rule 51's current language suggests otherwise.[2] However, even in criminal cases, the

---

[1]The City originally appealed from the denial of its May 25 motion. On June 5, 2000, the City filed an additional motion for a new trial on the ground of inconsistent verdicts. That motion was denied, and the City renewed its notice of appeal. The denial of the June 5 motion is no longer at issue in this appeal, and we consolidated these two appeals on August 24, 2000.

[2]This is so by judicial construction in this circuit. Davis v. Rennie, 264 F.3d 86, 100-01 (1st Cir. 2001), cert. denied, 122

-4-

requirements for plain error, set out in Olano itself, 507 U.S. at 732-36, are extremely demanding; and in this circuit, it is rare indeed for a panel to find plain error in a civil case. Still, this case at first blush meets the Olano requirements: error, plainness, prejudice, and miscarriage of justice or something akin to it.

The district court itself acknowledged the error, its plainness is amply demonstrated by a contrary Supreme Court precedent on point (namely, City of Newport) that has been on the books for over twenty years. Prejudice in the sense of affecting the final outcome is also obvious: had the jury been instructed as to the City's immunity, there almost certainly would not be a $500,000 judgment against it today, although conceivably the jury might have somewhat increased the compensatory damages.

This also appears to be the rare civil case where the miscarriage of justice requirement is met. Importantly, the error was caused by the plaintiff as well as the defendant. Plaintiff's counsel, quite erroneously, represented to the district court at the charge conference that punitive damages were permissible against a municipality. This does not excuse the negligence of the City's counsel but it does mean that responsibility for the mistake is shared--a somewhat unusual circumstance.

---

S. Ct. 1909 (2002); see also 9A Wright & Miller, Federal Practice & Procedure, § 2558, at 462 & n.11 (2d ed. 1995). That rule is currently being amended to make this reservation clear, see Advisory Committee on the Federal Rules of Civil Procedure, Report of the Civil Rules Advisory Committee 62-68 (March 14, 2001, revised Jul. 31, 2001), bringing Rule 51 in line with the normal practice in the case of other errors, e.g., Fed. R. Evid. 103(d).

Further, even without punitive damages, the plaintiff is still entitled to full actual damages, which in this case are substantial. Nor need such damages be reduced by attorneys' fees because under section 1983 such fees are separately awarded. 42 U.S.C. § 1988 (2000). Punitive damages are, in this sense, a windfall--and one that here would come at the expense of innocent taxpayers of the City, the very ones for whose benefit City of Newport adopted the rule giving municipalities such an immunity. 453 U.S. at 267.

The main hitch with the plain error doctrine is that City of Newport described the protection against punitive damages as an "immunity," rather than as a "rule" forbidding punitive damages. Accordingly, as an immunity need not be asserted, one could argue that the instruction was not "error" at all, let alone "plain error." A state, after all, can waive sovereign immunity. Certainly if counsel for the City had stood up and said that the City preferred to face punitive damages, it could hardly complain if the judge took the City at its word.

Still, this is surely a matter of form over substance. For all practical purposes, the district court made an error, and the district court itself acknowledged as much. If the district judge had discovered Newport on her own the night before the instructions, it is hardly likely that she would have authorized punitive damages. And although a state might sometimes choose to waive sovereign immunity for policy reasons, hoping to win on the

merits, one can hardly imagine a competent lawyer choosing to waive protection against punitive damages.

This realistic view is not without precedent. In O'Connor v. Huard, 117 F.3d 12 (1st Cir. 1997), cert. denied, 522 U.S. 1047 (1998), we reviewed for plain error the defendant's defense of qualified immunity, raised for the first time after the entry of judgment. In applying the plain error analysis, we did not find that the defendant forfeited her immunity by her procedural default, but rather denied relief on the lack of evidence. Id. at 17. We treated a late-filed interposition of qualified immunity in the same fashion in Lewis v. Kendrick, 944 F.2d 949, 953 (1st Cir. 1991). See also id. at 956 (Breyer, C.J., concurring).[3]

Of course, even if the doctrine of plain error were not strictly applicable, it is settled in this circuit that "an appellate court has discretion, in an exceptional case, to reach virgin issues," that is, to relieve a party of a prior forfeiture. United States v. La Guardia, 902 F.2d 1010, 1013 (1st Cir. 1990). Recently we described pertinent factors in Harwood, 69 F.3d at 627-29 (relieving forfeiture of legislative immunity); most of those factors are present here and, although this case, unlike Harwood, does not involve a constitutional issue, neither did Harwood disregard a governing and plainly applicable Supreme Court

---

[3]The approach that we have followed in qualified immunity cases seems to accord with the approach in our sister circuits. See, e.g., Kelly v. City of Oakland, 198 F.3d 779, 784-85 (9th Cir. 1999) (examining a late-filed qualified immunity defense on the merits under the plain error standard).

precedent.  See also United States v. Krynicki, 689 F.2d 289, 291-92 (1st Cir. 1982).    The City asserts that we should simply strike the punitive damages award, holding the actual damages award intact.  Probably, the jury's actual damages award was uninfluenced by the large punitives; but given that the City bears much of the blame for any uncertainty, we think on remand it should be the plaintiff's option whether to have a new trial on actual damages against the City (but not against Ciavola)--a trial in which plaintiff's attorneys' fees will be borne by the City.  See 42 U.S.C. § 1988 (2000).  The district court shall set a time within which the plaintiff may make such an election.

The judgment insofar as it awards punitive damages against the City is vacated and the matter is remanded for further proceedings not inconsistent with this opinion.  Each side will bear its own costs on this appeal.

It is so ordered.


- Concurrence follows -

**TORRUELLA, Circuit Judge (Concurring).** Though I arrive at the same destination as the majority, I choose an alternative route to get there -- a route which, in my view, is both less conceptually troubling and better supported by existing precedent.

Contrary to the majority opinion, I do not think that this case can be resolved by relying on the plain error doctrine. Taken together, the first two prongs of the plain error standard require the appellant to demonstrate that an obvious error of law occurred. See Olano, 507 U.S. at 732-36. The majority, the parties, and the district court are of the view that it is a foregone conclusion that such an error occurred here. Their steadfast belief rests on the assumption that the district court's jury instruction, which made punitive damages available against the City, directly contradicted the Supreme Court's holding in City of Newport. According to them, City of Newport essentially stands for the proposition that punitive damages are unavailable against a municipality under § 1983.

Notwithstanding their belief, however, City of Newport never held that punitive damages are unavailable in a § 1983 action against a municipality. Rather, the Supreme Court ruled that "a municipality is immune from punitive damages under § 1983." City of Newport, 453 U.S. at 271 (emphasis added); accord Saldaña-Sánchez v. López-Gerena, 256 F.3d 1, 11 (1st Cir. 2001) (characterizing City of Newport as holding that "as a general rule, municipalities are immune from punitive damages judgments when sued under § 1983"). Although this distinction may appear

-9-

inconsequential, it is rather significant in light of the circumstances of this case. If the Supreme Court had held that punitive damages were unavailable against a municipality in a § 1983 suit, then a plaintiff would be filing a frivolous complaint were he to sue for such damages. See Fed. R. Civ. P. 11(b)(2) (requiring that the claims in a party's complaint be "warranted by existing law"). However, the Supreme Court's holding that municipalities are "immune" from punitive damages under § 1983 has slightly different implications. Immunity, whether qualified or absolute, is an affirmative defense that can be forfeited, if not asserted in a timely manner, or waived. See Cozzo v. Tangipahoa Parish Council--President Gov't, 279 F.3d 273, 283 (5th Cir. 2002) (ruling that absolute immunity is an affirmative defense that is forfeited if not pleaded); Guzmán-Rivera v. Rivera-Cruz, 98 F.3d 664, 667 (1st Cir. 1996) ("Since immunity must be affirmatively pleaded, it follows that failure to do so can work as a waiver of the defense."); O'Neill v. Krzeminski, 839 F.2d 9, 13 (2d Cir. 1988) (holding that a municipality's indemnification agreement with defendant constituted a waiver of its municipal immunity defense); Bell v. City of Milwaukee, 746 F.2d 1205, 1271-72 (7th Cir. 1984) (holding that state indemnification statute waived municipal immunity defense with respect to indemnified judgments). Thus, whereas unavailability implies a limitation on damages altogether, immunity, in the doctrinal sense, is a defense that can be forfeited or waived.

In fact, in Saldaña-Sánchez, we allowed a plaintiff to seek discovery against a municipality on the claim that the city had waived its municipal immunity defense under § 1983. 256 F.3d at 11-12. Our holding rested on the explicit assumption that the municipal immunity set forth in City of Newport is an affirmative defense that can be waived. See id. at 12 (noting that precedent supports the view that waiver of the municipal immunity defense is possible). Moreover, we questioned whether the city had forfeited its municipal immunity defense by failing to assert it at or before trial. See id. Saldaña-Sánchez thus demonstrates how permeable municipal immunity from punitive damages under § 1983 can be, both in terms of forfeiture and waiver.

In the instant case, the City never pled an affirmative defense of immunity in its answer and did not raise this defense at summary judgment or trial. The City's failure to do so can reasonably be viewed as a forfeiture of that defense. See, e.g., Guzmán-Rivera, 98 F.3d at 667 (holding that the failure of a government official to timely assert an affirmative defense of qualified immunity under § 1983 at trial would forfeit the defense for trial purposes). I therefore cannot conclude that the district court committed plain error in charging the jury that punitive damages were available against the City. To hold otherwise would require me to adopt two seemingly implausible propositions: (1) that the Supreme Court's holding in City of Newport was perfectly clear that no punitive damages are ever available under § 1983; and (2) that Saldaña-Sánchez, which supports the proposition that

-11-

municipal immunity can be forfeited, was so obviously incorrect as a matter of law that the district court should not have relied on it.  See generally United States v. Turman, 122 F.3d 1167, 1171 (9th Cir. 1997) ("If the district judge would have to be clairvoyant to detect the error . . . the error is not plain and defendant must object as a condition for having it considered on appeal.").

Rather than delving into an abyss of implausibility, I hold firm to the view that the district court did not commit plain error in its jury instructions because the City failed to assert, and thus likely forfeited, its affirmative defense of municipal immunity from punitive damages.

The majority contends that "this [argument] is surely a matter of form over substance."  The majority elaborates on this point by offering a hypothetical: if the night before the jury instructions were given the district court judge had discovered the City of Newport opinion, "it is hardly likely that [the judge] would have authorized punitive damages."  I respectfully disagree and offer a derivation of the majority's hypothetical to demonstrate my point: if the night before the jury instructions were given, the district court judge obtained a complete description of the state of the law -- that is, discovered the municipal "immunity" to punitive damages set forth in City of Newport and learned about our opinion in Saldaña-Sánchez, which explicitly discusses how the City of Newport immunity defense can be waived or forfeited -- I am convinced that the judge would have

-12-

instructed the jury that punitive damages were available, since the City failed to assert its immunity defense at any stage of the litigation.

Notwithstanding my unwillingness to find plain error, I believe that there is an alternative, and more principled, ground for striking the punitive damages award against the City. Ordinarily, a party who fails to raise a claim or a defense in the district court is prohibited from unveiling it in the court of appeals. See United States v. Slade, 980 F.2d 27, 30 (1st Cir. 1992). "This rule is deeply embedded in our jurisprudence, and we have invoked it with a near-religious fervor." Harwood, 69 F.3d at 627 (internal citations omitted). However, every rule speaks of an exception, and this one is no different. In exceptional circumstances and to prevent a miscarriage of justice, this Court may relieve a party from his failure to timely assert an affirmative defense. See, e.g., Correa v. Hosp. San Francisco, 69 F.3d 1184, 1196 (1st Cir. 1995); see generally La Guardia, 902 F.2d at 1013 (holding that "an appellate court has discretion, in an exceptional case, to reach virgin issues").

In Harwood, we reached the merits of a legislative immunity defense even though the defendants failed to raise the issue in the district court. 69 F.3d at 627-29. We found it appropriate to reach the untimely immunity issue because: (1) the omitted issue was purely legal in nature; (2) the belated proffer raised an issue of constitutional magnitude; (3) the omitted argument was highly persuasive; (4) there was no inequity or

-13-

special prejudice to the plaintiffs in allowing the defense to be raised for the first time on appeal; (5) the omission seemed entirely inadvertent; and (6) the omitted issue implicated a matter of great public concern.  See id.; see also Krynicki, 689 F.2d at 291-92 (allowing a party to raise a virgin issue on appeal because (1) the issue was purely legal; (2) the omitted argument was highly persuasive; (3) the omitted issue was likely to arise again in other cases; and (4) the failure to address the issue would result in a miscarriage of justice).

Because I believe that these factors are more than adequately represented in this case, I would excuse the City's failure to raise its municipal immunity defense below.  First, whether the City should be immune from the $500,000 punitive damages award is a purely legal issue, cf. Harwood, 69 F.3d at 627 (discussing the issue of legislative immunity as "purely legal in nature"), and the record necessary to resolve it can be developed no further.  See La Guardia, 902 F.2d at 1013 ("[Whether] the point can be resolved with certitude on the existing record . . . [is] a factor that often inclines a court to entertain a pivotal argument for the first time on appeal.").  Second, the omitted issue is highly persuasive -- that is, if the City is allowed to raise its municipal immunity defense, it would undoubtedly prove victorious on the issue given the Supreme Court's holding in City of Newport.

Third, Chestnut would not suffer any procedural inequity or special prejudice were we to address this issue.[4] Plaintiff addressed the omitted issue in his brief and set forth his claims at oral argument. Cf. Singleton v. Wulff, 428 U.S. 106, 120 (1976) (discussing importance, in determining whether to reach an omitted issue, of ensuring that the opposing party "ha[s] the opportunity to present whatever legal arguments he may have" to the court of appeals). Thus, the absence of unfairness weighs in favor of addressing the omitted issue.

Fourth, the City's failure to raise its municipal immunity defense seems entirely inadvertent. Although the omission had the regrettable effect of prolonging the trial, it did not produce any tactical advantage to the defendant.

Fifth, and perhaps most importantly, the failure to address the City's municipal immunity defense would result in a miscarriage of justice. "[P]unitive damages imposed on a municipality . . . are likely accompanied by an increase in taxes or a reduction of public services for the citizens footing the bill." City of Newport, 453 U.S. at 267. It is convoluted and unfair to impose the burdens of a punitive damages award on the

_____

[4]Though plaintiff would be stripped of his punitive damages award if the City is allowed to assert its municipal immunity defense on appeal, that prejudice is not the type contemplated by this factor. Rather, we examine whether the plaintiff would suffer any procedural unfairness if we address the omitted issue. See Harwood, 69 F.3d at 629 (stating that plaintiffs would not suffer any "special prejudice or inequity" by addressing the omitted issue, despite the fact that reaching the issue on appeal meant that the injunction that plaintiffs obtained in the lower court would be vacated).

same taxpayers and citizens for whose benefit the wrongdoer was being chastised. See id. Punishing blameless taxpayers for the ineptitude of the City's attorney is simply unjust, especially considering that the taxpayers are in no position to deter similar negligence in the future.

Because all of these factors converge in the City's favor, I would excuse the City's failure to assert its immunity defense below and proceed to address the merits of the defense. In City of Newport, the Supreme Court unequivocally held that municipalities are immune from punitive damages in § 1983 actions. 453 U.S. at 271. Chestnut can advance no argument, and I cannot conceive of any, to attack this proposition. On this basis, I would find that the City's defense precludes the punitive damages award in this case, and I would strike those damages.

I therefore concur in the outcome of the majority opinion.


- Dissent Follows -


-16-

**LIPEZ**, **Circuit Judge**, **with whom CYR**, **Senior Circuit Judge**, **joins, dissenting**.  I can understand the impulse to grant relief to the City here.  Together, plaintiff's counsel and counsel for the City failed to recognize the well-established principle that local governmental entities are immune from punitive damages under 42 U.S.C. § 1983.  City of Newport v. Fact Concerts, Inc., 453 U.S. 247 (1981).  A very able trial judge also missed the mistake.  Hence, the jury awarded $500,000 in punitive damages against the City.

No one disputes that, under City of Newport, the City could have avoided such an award.  But that easy avoidance does not justify relieving the City of the consequences of its mistake.  Whether we treat the City's oversight as a failure to raise the affirmative defense of City of Newport immunity, or as a failure to object to a jury instruction under Rule 51, we must affirm the jury's verdict unless we conclude that allowing the punitive damages award to stand would constitute a "miscarriage of justice." Until today, we have reserved that label for "extraordinary" cases. Teamsters, Local No. 59 v. Superline Transp. Co., 953 F.2d 17, 21 (1st Cir. 1992).  Indeed, it appears that we have never before found a miscarriage of justice in a civil case involving faulty jury instructions.  See Davis v. Rennie, 264 F.3d 86, 100-01 (1st Cir. 2001).  The circumstances of this case give us no reason to depart from that settled practice.  Therefore, I respectfully dissent.

The majority and concurring opinions cite several factors to support their conclusion that allowing the punitive damages award to stand would result in a miscarriage of justice. In my view, those factors -- either individually or in combination -- fall far short of a miscarriage of justice.

## A. Innocent Taxpayers

Both the majority and the concurring opinions emphasize that affirming the punitive damages award would be unjust because it would punish innocent taxpayers. See City of Newport, 453 U.S. at 267. Those references to innocent taxpayers seem to have multiple meanings. The taxpayers are innocent in the sense that they did not engage in the conduct that the punitive damages are intended to punish and deter. Instead, the taxpayers -- who do not need to be deterred from future misconduct -- must pay for the misdeeds of governmental actors. The taxpayers also are innocent in the sense that they did not make the mistake in litigation that resulted in the punitive damages award. Instead, that mistake was made by the City's counsel.

Both versions of the innocence argument prove too much. The first version, focusing on the absence of deterrence, is simply a restatement of a policy reason invoked by the Supreme Court for the rule that municipalities are immune from punitive damages under § 1983. If that policy reason translates into a miscarriage of justice in every case where punitive damages are wrongly awarded against a municipality, there should be no pretense of a multi-

factor analysis in such cases. Certainly, this version of innocence does not distinguish one such case from another.

On an even more basic level, the innocent taxpayer will always be the victim when some error at trial results in a large (or larger) damages award against a municipality or other governmental entity. Thus -- unless we are prepared to recognize a local-government exception to our rules governing procedural default -- the mere fact that innocent taxpayers will bear the brunt of the City's error cannot suffice to establish a miscarriage of justice here.[5]

The second version of the innocence argument suffers from a similar defect in failing to distinguish this case from any other case subject to plain error review. There are few tenets so well established in American jurisprudence as the proposition that a client is bound by the mistakes of its chosen counsel. See, e.g., Irwin v. Dept. of Veterans Affairs, 498 U.S. 89, 92 (1990) (explaining that in "our system of representative litigation . . . each party is deemed bound by the acts of his lawyer-agent"); Hoult v. Hoult, 57 F.3d 1, 5 (1st Cir. 1995) ("We have repeatedly held that the acts and omissions of counsel are

_____

[5] Consistent with that view, federal courts in other contexts have refused to allow public entities to belatedly raise an affirmative defense to damages, notwithstanding the impact on innocent taxpayers. See, e.g., Bentley v. Cleveland County Bd. of County Comm'rs., 41 F.3d 600, 604-05 (10th Cir. 1994) (concluding that county, having failed to raise affirmative defense of $100,000 statutory damages cap in discrimination suit until after $157,000 verdict was rendered, forfeited its right to that defense); Ingraham v. United States, 808 F.2d 1075, 1079 (5th Cir. 1987) (barring government from belatedly raising statutory cap on medical malpractice damages).

customarily visited upon the client in a civil case." (internal quotation marks omitted)). Plain error review offers an exception to that general rule for extraordinary cases. Obviously, the plain error standard -- and particularly the requirement that relief will not be available absent a "miscarriage of justice" -- cannot be satisfied simply because the complaining party (or those who ultimately bear its costs) will be harmed by its attorney's mistake. To hold otherwise would deprive the miscarriage of justice requirement of any meaning, except in the very rare case where the error was caused by the party itself.

Put simply, the harm to innocent taxpayers here is no different from the harm that will occur whenever punitive damages are erroneously awarded against a municipality under § 1983, or when government counsel makes a costly blunder. While unfortunate, such harm does not constitute a "peculiar circumstance[]" that necessitates relief in order to "prevent a clear miscarriage of justice." Nimrod v. Sylvester, 369 F.2d 870, 873 (1st Cir. 1966).

B.      Windfall to Chestnut

The majority opinion states that the court is justified in affording relief because this punitive damages award was a "windfall" for Chestnut, meaning, I gather, that those damages were unnecessary to compensate him fully. That assertion is grounded in speculation. We cannot know how the jury would have treated the compensatory damages question had it had been aware that punitive damages were unavailable.

-20-

One thing is very clear, however.  This was not a runaway jury.  To the contrary, Chestnut presented detailed evidence of the pay differential between his income as a crane operator and as a crane mechanic, including expert testimony from an economist who placed his past and future economic damages at $880,000.  That expert prepared a report that was admitted into evidence regarding present value calculations of Chestnut's economic damages under various assumptions.

Thus, considered in combination with the compensatory damages award, the punitive damages were well within the range of the compensable injury Chestnut sought to establish at trial.  Only by ignoring reality can it be suggested, as the majority does, that the compensatory damages award to Chestnut probably was "uninfluenced by the large punitives."  Rather, absent the availability of punitive damages, the jury may well have awarded Chestnut substantially more in compensatory damages.  We should be most reluctant to grant relief on the basis of an alleged windfall when we are unable to determine whether -- and to what extent -- it actually occurred.

## C.    Shared Responsibility for the Error

The majority emphasizes that Chestnut's counsel played a role in causing the error -- a circumstance that it describes as "somewhat unusual."  I see nothing unusual in such shared responsibility.  In the process of assisting the judge with jury instructions, the parties routinely submit their proposed instructions.  Not uncommonly, one party fails to see an error in

-21-

the other party's proposed instructions until after an unfavorable verdict. The objection is then raised, subject to plain error review. In that circumstance, both parties share responsibility for the error. However, until today, that fact has not entered the miscarriage of justice analysis.

The reason is fairly simple. In any case involving plain error review, the appellant will argue that the court below made an error that was so plain or obvious that it should be corrected notwithstanding the litigants' failure to point it out. Therefore, as a matter of simple logic, it cannot possibly be enough that opposing counsel failed to call the court's attention to a clear legal error or even said affirmatively that there was no error.[6] That will be true in any case that makes it past the first prong of the plain error test; something more is needed in order to establish a miscarriage of justice.

In addition to being inconsistent with the well-established plain error standard, the majority's reasoning is also unfair. In our adversary system, counsel for the City had the obligation to understand the law and advocate effectively for its client. It seems odd to equate Chestnut's mistake with the negligence of the City. To do so unjustly penalizes Chestnut for failing to protect the interests of the City, his adversary in litigation.

---

[6] There is no suggestion in the record that Chestnut's counsel knowingly misrepresented the availability of punitive damages to the court. If there was such a knowing misrepresentation, this would be an entirely different case.

**D.    Precedent**

In a final attempt to justify the grant of relief here, the majority cites Nat'l Ass'n of Social Workers v. Harwood, 69 F.3d 622 (1st Cir. 1995). There, as here, we gave the appellants the benefit of a governmental immunity notwithstanding their failure to raise that defense at trial. But that is where the parallel ends. The appellants in Harwood were state legislators, and the affirmative defense they tardily invoked was state legislative immunity. That kind of immunity is notably different from the immunity to punitive damages at issue here.

First, recognizing that legislative immunity is grounded in constitutional doctrine, we noted in Harwood that "[w]hen the Justices initially recognized state legislative immunity as a component of federal common law, they turned to the Speech or Debate Clause [U.S. Const. art. I., § 6, cl. 1] for guidance anent the contours of the doctrine." Harwood, 69 F.3d at 629. The fact that the defense raised "an issue of constitutional magnitude" was among the factors we took into consideration in deciding to consider the legislative immunity defense, notwithstanding the procedural default. Id. at 627. In contrast, the City of Newport municipal immunity to punitive damages is a purely common law defense, grounded in history and policy considerations. See City of Newport, 453 U.S. at 261 ("In sum, we find that considerations of history and policy do not support exposing a municipality to punitive damages for the bad-faith actions of its officials.").

-23-

Second, we explained in Harwood that our decision to relieve defendants from their procedural default was "fortified by our recognition that a primary purpose of the immunity is to prevent courts from intruding into precincts that are constitutionally reserved to the legislative branch." 69 F.3d at 628 n.6. Thus, we emphasized that the omitted issue of legislative immunity "implicates matters of great public moment, and touches upon policies as basic as federalism, comity, and respect for the independence of democratic institutions." Id. at 628. Relief was necessary, we explained, to prevent the intrusion of the judicial branch into "the internal operations of a state legislature." Id. at 629.

No such separation-of-powers concerns are implicated here. Rather, we are faced only with the sort of "individualized harm that occurs whenever the failure seasonably to raise a claim or defense alters the outcome of a case." Id. at 628 n.5. That is not enough to warrant relief under the "miscarriage of justice" standard. Id.

## II.

In sum, the majority's invocation of Harwood -- like its emphasis on innocent taxpayers, Chestnut's so-called "windfall," and his shared responsibility for the error -- is insufficient to qualify this case as extraordinary, or its result as a miscarriage of justice. That, in itself, is enough to foreclose relief here. But there is more. Several other factors counsel strongly against granting relief in this case.

-24-

First, it bears emphasis that the procedural misstep by the City was particularly egregious. The rules set out in City of Newport, governing immunity from punitive damages, are hardly a trap for the unwary. To the contrary, the City had -- and ignored -- repeated opportunities to invoke that immunity. Chestnut made his intention to seek punitive damages explicit in his complaint and then in two subsequent amended complaints. The City never pled an affirmative defense in its answer to punitive damages under § 1983 and did not raise its defense to punitive damages at the pretrial conference.

During the charge conference conducted prior to closing arguments, the district court specifically asked counsel whether punitive damages were available against the City. Yet again the City failed to assert its immunity defense. Cf. Danco, Inc. v. Wal-Mart Stores, Inc., 178 F.3d 8, 15 (1st Cir. 1999) (deeming it material to "plain error" inquiry that legal issue was "specifically discussed" before trial court). Following the charge conference, the court recessed for a lunch break prior to entertaining closing arguments, thereby providing counsel with another opportunity to review the proposed jury charge and conduct any legal research suggested thereby.

During closing argument, Chestnut urged the jury to award punitive damages against the City. The City did not object. Then, the district court furnished counsel with the verdict form, which explicitly provided for punitive damages against the City. Still the City neither objected to the verdict form nor asserted its

-25-

defense against any award of punitive damages, even though the proposed charge included an explicit instruction authorizing the jury to consider a punitive damages award against the City. Finally, although jury deliberations did not commence until the next day, which assured that the City had yet more time to examine the proposed charge and verdict form and undertake whatever legal research might be required, the City nevertheless failed to object to the proposed punitive-damages instruction.

A "miscarriage of justice" claim merits little credence on appeal where the desired relief was so obviously and readily available in the trial court. In my view, a "miscarriage of justice" entails a measure of fundamental unfairness. There is no such unfairness here, however, given that counsel for the City was accorded every conceivable opportunity to oppose the punitive damages claim and the related jury instruction.

Second, "[i]t counts heavily against finding plain error that the party on the other side would be unfairly prejudiced." Id. Were we simply to vacate the punitive damages award, it is likely that Chestnut would be prejudiced. As explained above, the availability of punitive damages may well have affected the compensatory damages award made by the jury. Consequently, had punitive damages not been an option, the jury might very well have determined upon a larger compensatory damages award.

In order to forfend against the prejudice problem, the majority refuses to strike the punitive damages award, opting instead for a new trial on the issue of damages should Chestnut

-26-

choose to pursue that option.  Although its approach is surely more just, it is not without its own difficulties.  The City sought alternative relief from the trial court:  either (i) that the punitive damages award be stricken, leaving in place only the compensatory damages, or (ii) a new trial.  On appeal, however, the City has abandoned its request for alternative relief, opting instead for its all-or-nothing strategy by requesting that we strike the punitive damages award on the ground that the availability of such damages affected neither the presentation of Chestnut's case nor the amount of compensatory damages awarded by the jury.

Although we frequently permit appellees to preserve their trial court judgments by affirming on any basis apparent from the record (thereby furthering the interests of finality), see, e.g., McGurn v. Bell Microproducts, Inc., 284 F.3d 86, 91 (1st Cir. 2002), we consistently have held appellants to the arguments raised and the relief sought, see, e.g., In re Grand Jury Proceedings, 183 F.3d 71, 73 n.1 (1st Cir. 1999) (declining to consider argument abandoned on appeal).  Here, on the other hand, the majority, sua sponte, undoes a jury verdict by ordering a new trial.  Moreover, in so doing, it once again reaches out to relieve the City of its fundamental mistake -- its selection of an ineffective appellate strategy -- by according relief not sought by the City at the outset of this appeal.

Finally, established precedents, in our own and other circuits, plainly prescribe that municipalities may forfeit their

immunity defense to punitive damages claims under § 1983 due to their litigation conduct. For instance, in <u>Saldaña-Sánchez</u> v. <u>Lopez-Gerena</u>, 256 F.3d 1, 11-12 (1st Cir. 2001), we recognized that the defendants' right to raise <u>City of Newport</u> may have been barred on procedural grounds. Similarly, in <u>Black</u> v. <u>Stephens</u>, 662 F.2d 181, 184 n.1 (3rd Cir. 1981), the Third Circuit affirmed a § 1983 punitive damages award against the City of Allentown, after having declined to allow the city to assert its <u>City of Newport</u> defense due to its failure to do so in the district court. <u>See</u> <u>also</u> <u>Barnett</u> v. <u>Housing Auth. of Atlanta</u>, 707 F.2d 1571, 1579-81 (11th Cir. 1983) (declining to relieve appellant of failure to object to the submission of the § 1983 punitive damages issue to the jury, and affirming punitive damages award against Atlanta Housing Authority on account of that "procedural default"), <u>overruled on other grounds</u>, <u>McKinney</u> v. <u>Pate</u>, 20 F.3d 1550, 1558-59 (11th Cir. 1994).[7] I can discern no sound reason for following a different course in the instant case.

---

[7] <u>But</u> <u>see</u> <u>Williams</u> v. <u>Butler</u>, 746 F.2d 431, 443-44 (8th Cir. 1984) (affirming district court decision to set aside § 1983 punitive damages award despite failure to object to punitive damages instruction at trial), <u>on reh'g</u>, 762 F.2d 73 (8th Cir. 1985) (en banc), <u>vacated on other grounds sub nom.</u> <u>City of Little Rock</u> v. <u>Williams</u>, 475 U.S. 1105 (1986), <u>on remand</u>, <u>Williams</u> v. <u>Butler</u>, 802 F.2d 296 (8th Cir. 1986) (en banc), <u>vacated on other grounds sub nom.</u> <u>City of Little Rock</u> v. <u>Williams</u>, 485 U.S. 931 (1988), <u>on remand</u> <u>Williams</u> v. <u>Butler</u>, 863 F.2d 1398 (8th Cir. 1988) (en banc), <u>cert. denied</u>, <u>City of Little Rock</u> v. <u>Williams</u>, 492 U.S. 906 (1989).

## III.

This is an awkward case, to be sure. The punitive damages issue should not have been presented to the jury, and the punitive damages award against the City was plainly contrary to law. Yet the question with which we are presented is neither whether the award amounts to plain error, nor whether the interests of the City were adversely affected. Instead, the issue is whether there was a miscarriage of justice such that the punitive damages award must be set aside. For the reasons stated above, I conclude that no such miscarriage of justice occurred. As I see no reason to relieve the City of the consequences of its litigation conduct, the punitive damages award should stand.