# United States Court of Appeals
## For the First Circuit

No. 05-1820

GRAEME SEPHTON,

Plaintiff, Appellant,

v.

FEDERAL BUREAU OF INVESTIGATION,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Michael A. Ponsor, U.S. District Judge]

Before

Selya, Lipez, and Howard, Circuit Judges.

Daniel J. Stotter, with whom Bromley Newton, LLP, Robert Wolkon, and Wolkon & Pascucci, LLP were on brief, for appellant.
Karen L. Goodwin, Assistant United States Attorney, with whom Michael J. Sullivan, United States Attorney, was on brief, for appellee.

March 31, 2006

**HOWARD**, **Circuit Judge**.  In 1996, a passenger airliner bound for Paris crashed in the Atlantic Ocean ten minutes after departing from New York.  All on board perished.  Following an investigation by multiple federal agencies, including the FBI, the National Transportation Safety Board concluded that the probable cause of the crash was an explosion in one of the fuel tanks.  A group of the victims' family members formed an unofficial organization to conduct an independent investigation into the crash.  A member of that organization, Graeme Sephton, brought the present action under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, seeking records from the FBI concerning its investigation.  After almost five years of litigation and the disclosure of nearly 600 pages of documents, the district court concluded that the FBI had satisfied its obligation to conduct a "reasonable" search for documents responsive to Sephton's FOIA request, and accordingly granted it summary judgment.  See Sephton v. FBI, 365 F. Supp. 2d 91 (D. Mass. 2005).  For substantially the reasons offered by the district court, we affirm.

The district court's opinion provides a comprehensive description of the lengthy procedural and factual history of this case.  See id. at 93-96.  We therefore confine our narrative to the essentials.

In September 1998, Sephton sent a letter to the FBI's New York field office -- the office that had coordinated the FBI's

-2-

investigation -- requesting a list of all foreign material removed or recovered from the victims' bodies and the results of any forensic analyses performed by the FBI on such materials. The FBI initially located 21 pages of responsive documents, but it resisted disclosure of those documents on the grounds that their disclosure either would interfere with an ongoing investigation, see 5 U.S.C. § 552(b)(7)(A), or violate the secrecy of federal grand jury proceedings, see id. § 552(b)(3).

After exhausting his administrative remedies, Sephton filed a federal action in July 2000 seeking disclosure of the withheld documents and an injunction ordering the FBI to conduct a thorough, good-faith search of its records for all documents responsive to his request. The parties spent the next five years litigating this case in the district court and in this court. Along the way, the FBI relinquished the 21 pages of initially withheld documents and conducted further searches yielding over 550 pages of additional documents that were subsequently delivered to Sephton. The litigation proceeded, however, because Sephton remained unconvinced that the FBI had conducted an adequate search. By the time the district court issued its summary judgment ruling, the FBI had submitted four affidavits attesting to and describing its search for documents.

Scott Hodes, the Acting Unit Chief of the Litigation Unit, Freedom of Information-Privacy Acts Section, Office of Public

and Congressional Affairs, described the FBI's Central Records System (CRS) and explained how it was searched to comply with Sephton's request. Hodes's successor, Christine Kiefer, described the main file concerning the 1996 crash and how that file, containing 80,000 pages, was organized into 97 sub-files. She stated that the FBI had reviewed the list of sub-files and had identified one particular sub-file, containing over 2,000 pages, as the likely repository of the records Sephton sought. She also stated that a paralegal had searched this sub-file "page-by-page." Eileen Rawlinson, supervisor of the Legal Unit of the Freedom of Information-Privacy Acts Group in New York, explained how the FBI had initially overlooked 550 pages of responsive documents that were later provided to Sephton. She also described the FBI's further search efforts, including a "line-by-line" review of the previously identified sub-file as well as a review of certain records located in other areas of the main file. The final affidavit, from Gregory Carl, Unit Chief of the Explosive Unit, Scientific Analysis Section, Laboratory Unit, rebutted certain claims made in Sephton's summary judgment submissions. Carl stated that the FBI Laboratory has not, since 1995, maintained any records systems containing records not reflected in the CRS.

The parties disputed before the district court whether these affidavits established as a matter of law that the FBI had adequately searched for documents responsive to Sephton's FOIA

request. Applying our precedent, the district court recognized that although Sephton might prefer the FBI to search every file that might conceivably contain responsive information, FOIA requires a "reasonable" search, not an exhaustive one. See Maynard v. CIA, 986 F.2d 547, 559 (1st Cir. 1993) ("The crucial issue is not whether relevant documents might exist, but whether the agency's search was reasonably calculated to discover the requested documents.") (internal quotation marks omitted). The court reviewed the four FBI affidavits and found that they collectively describe, "in a detailed and nonconclusory fashion, the structure of the agency's file system, the scope of the search performed, and the method by which it was conducted." Sephton, 365 F. Supp. 2d at 97 (setting forth the Maynard standard for establishing the adequacy of an agency's search at the summary judgment stage). The court further found that Sephton's affidavits were insufficient to rebut the presumption of good faith that FOIA attaches to agency affidavits. Id. at 97, 100; see Maynard, 986 F.2d at 560 (holding that when an agency seeks summary judgment based on reasonably detailed affidavits establishing that it conducted a reasonably thorough search, "the FOIA requester can rebut the agency's affidavit[s] only by showing that the agency's search was not made in good faith"). Concluding that the FBI's search had met the FOIA standard, the court granted its motion for summary judgment. Sephton, 365 F. Supp. 2d at 101.

On appeal, Sephton challenges the district court's ruling that the FBI's search was adequate. Our review of this ruling is de novo. See Church of Scientology Int'l v. U.S. Dep't of Justice, 30 F.3d 224, 228 (1994). Because we agree that the FOIA standard was met, for largely the reasons expressed in the district court's cogent opinion, we see no utility in replicating its sound analysis here. See Lawton v. State Mut. Life Assurance Co. of Am., 101 F.3d 218, 220 (1st Cir. 1996) ("[W]hen a lower court produces a comprehensive, well-reasoned decision, an appellate court should refrain from writing at length to no other end than to hear its own words resonate.").[1] We write briefly, however, to address one argument raised by Sephton on appeal that he did not raise before the district court.

Sephton contends that, by operation of Fed. R. Civ. P. 8(d), the FBI's failure to file an answer to his FOIA complaint amounts to an admission to all of the allegations contained in the complaint, including the allegation that "the FBI acted in bad faith when, in response to plaintiff Sephton's legitimate FOIA request . . . it did not conduct an adequate search of its records . . . ." The FBI counters that Sephton forfeited this argument by

---

[1]Because we agree that the FBI's affidavits establish that copies of all potentially responsive documents -- including documents originating from the FBI's Washington, D.C. offices -- would have been stored in the CRS and that the FBI adequately searched the CRS, we need not consider Sephton's contention that the FBI had an obligation to search offices other than its New York office, the office to which the FOIA request was directed.

not raising it below.  See B&T Masonry Constr. Co. v. Public Srv. Mutual Ins. Co., 382 F.3d 36, 40 (1st Cir. 2004).

The issue is foreit and does not call for an exercise of our power to correct plain errors.  See Chestnut v. City of Lowell, 305 F.3d 18, 20 (1st Cir. 2002) (en banc per curiam).  At least two other circuits have held that FOIA does not require an answer to the complaint so long as the issues are otherwise joined, for example, by the filing a dispositive motion.  See Chilivis v. Securities and Exchange Comm'n, 673 F.2d 1205, 1209 (11th Cir. 1982) (filing a motion to dismiss satisfies FOIA's requirement that the agency file an answer or "otherwise plead"); Weber v. T.R. Coney, 642 F.2d 91, 93-94 (5th Cir. 1981) (same with respect to a motion for summary judgment).  We needn't expressly adopt or reject that proposition here; in light of the above precedent and the language in the statute allowing an agency to "answer or otherwise plead," 5 U.S.C. § 552(a)(4)(C), it was not plain error for the district court to consider the issues joined upon the FBI's filing of a motion for summary judgment.

**Affirmed**.